LAWRENCE SCHWEDES AND BILLY ANN SCHWEDES, PLAIN-
TIFFS AND APPELLANTS, v. DORLAINE A. ROMAIN AND LEE
ROY MUDGETT, DEFENDANTS AND RESPONDENTS.

No. 14188.
Submitted Oct. 19, 1978.
Decided Nov. 29, 1978.
587 P.2d 387.

Moore, Lympus & Doran, Kalispell, Gary G. Doran, argued, Kalispell, for plaintiffs and appellants.

Morrison & Hedman, Whitefish, Donald E. Hedman, argued, Whitefish, for defendants and respondents.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Lawrence and Billy Ann Schwedes (Schwedes) brought suit in the District Court, Eleventh Judicial District, Flathead County against Dorlaine A. Romain and LeRoy Mudgett (respondents) to obtain either specific performance of an alleged contract with respondents for the sale of land, or damages for breach of such contract. Respondents, after discovery, moved for summary judgment in their favor, which was granted. Schwedes appeal from the summary judgment against them, and from the refusal of the District Court to alter, amend, or cavate the summary judgment.

We conclude the District Court should be affirmed in this case.

In 1976, respondents, as part of a business partnership, owned twenty acres of land on or near the Swan River in Flathead County. Schwedes, residents of Santa Monica, California, searching for a place to retire in the Flathead Valley, received the following letter from Dorlaine A. Romain:

> "Romain & Mudgett
> Aug. 9, 1976
> Bigfork, Mont. 59911

"Mr. & Mrs. Laurence Schwedes
353 24th St.
Santa Monica, Calif. 90402
Dear Mr. Schwedes,

"Concerning the Swan River property you were interested in. We have contacted Mr. Charles Hash, attorney of Kalispell and he informs us that the Title Ins. Co. says the acreage and survey is correct at 19.53 acres and should be sold as is. If there is any confusion at the courthouse it can be cleared with a simple Quit Claim from us to Kirbys without contacting the Albrechts.

"We have agreed to sell to you for $60,000 cash if you are interested. There is $19,170.00 contract that could be assumed. This contract has 3 years left at 7½% interest.

"We have listed the property with the local realties at $65,000 with a 6% commission charge and have shown it several times but so far we have not heard anything interesting. We are interested in selling this year if possible and hope you will consider this price.

> Sincerely yours,
> "Dorlaine Romain"[sic]

Lawrence Schwedes on August 16, 1976 communicated acceptance of the respondents' offer by telephone call to Dorlaine A. Romain in Flathead County. Thereupon respondents employed an attorney, Tom Hoover, to attend to details relating to the closing of the real estate transaction. Mr. Hoover ordered a title insurance commitment with an effective date of September 9, 1976 and prepared appropriate deeds to be executed by respondents in favor of the Schwedes. A closing date was set for September 20, 1976, a date agreed upon by all the parties. However, before that date, Mr. Hoover, in a telephone conversation with Schwedes, indicated it would not be necessary for them to come to Flathead County to close the transaction until they were further notified by telephone by Mr. Hoover. Nevertheless, on the previously agreed upon closing date, September 20, 1976, Mr. Hoover called Schwedes to indicate that the title reports had been received and would be sent by mail to the Schwedes. At that time, Lawrence Schwedes offered in the telephone call to send the whole purchase price as agreed, but was told by Mr. Hoover that it would be unnecessary and that the Schwedes could take care of it when they came to close the transaction, which was then set for October 3, 1976.

On September 30, 1976, respondents sold the real property in question to a third party, identified in the record as the "Vornbrocks" from Alberta, Canada, for a consideration stated to be $64,000. The action in the District Court ensued.

It is clear from the record that no document in writing was signed by either of the Schwedes respecting the transaction; that Attorney Hoover had no authority in writing to bind respondents to the transaction; that respondents would have executed the necessary documents for the property transaction and authorized their delivery to the Schwedes if the purchase price had been delivered to them prior to the date of sale to the Vornbrocks; that the Schwedes did not take possession of the property, erected no improvements thereon, paid no taxes or other assessments on the property, nor any sums of money to respondents.

From our examination of the record, and our consideration of the briefs and oral argument herein, we must conclude (1) no enforceable contract between the parties existed; (2) there was no basis upon which the District Court could have granted specific performance to the Schwedes; and (3) even if a contract existed, there was no part performance thereof, nor estoppel against respondents, so as to take the contract out of the statute of frauds. Therefore, the summary judgment granted by the District Court against Schwedes was correct.

The four essential elements of a contract are (1) legally capable parties, (2) their consent, (3) a lawful object, and (4) consideration. Section 13-102, R.C.M. 1947. Here there is no evidence that any consideration moved from Schwedes to respondents. A mere oral promise to pay, as in this case, is not sufficient consideration to support a contractual obligation on the part of Schwedes. Such a promise must be binding and impose some legal obligation on the one making it. 17 Am.Jur.2d 450, 451 *Contracts* § 105. A contract is not made so long as, in the contemplation of both parties thereto, something remains to be done in order to establish contract relations. See *Mahoney v. Lester* (1946), 118 Mont. 551, 557, 168 P.2d 339.

■ Respondents argue that the acceptance of the offer by Schwedes was not unqualified, and required by section 13-321, R.C.M.1947, and therefore, this essential element of consent is also missing from the purported contract. Since this is an appeal from a summary judgment, we will not consider that point where the evidence may be conflicting, and the issue does not enter into our decision.

■ It is further true, however, that a contract for the sale of real estate is invalid unless it, or some note or memorandum thereof is in writing subscribed by the parties to be charged. Section 13-606(4), R.C.M.1947. Here there is no writing, memorandum or note binding Schwedes to buy this property. Hence, the oral promise of Schwedes was not legally binding, and imposed no legal duty upon them.

■ Likewise, Schwedes may not rely, to establish a contract between them and respondents, on the fact that Attorney Hoover prepared and mailed a form of deed and a title report, or that he extended the time for payment. The attorney, as any other agent, has no power to bind respondents in this case unless his authority to act on behalf of respondents is in writing, subscribed by respondents. Section 13-606(4); *Hartt v. Jahn* (1921), 59 Mont. 173, 196 P. 153.

■ We now consider whether the Schwedes are entitled to specific performance.

To begin with, the Schwedes have no evidence upon which they can establish a valid enforceable contract. In that situation, they may not obtain specific performance of the purported contract:

"While it is universally recognized that equitable relief by specific performance does not follow as a matter of course by establishing the existence and validity of the contract, the performance of which is sought, the existence of a valid contract is essential to the remedy of specific performance. In order for equity to decree specific performance, it is necessary that there be in existence and in effect a contract valid at law and binding upon the parties against whom performance is sought, for specific performance

is never applicable where there is no obligation to perform . . ." 71 Am.Jur.2d 27 *Specific Performance* § 13.

See *Long v. Cornell* (1963), 142 Mont. 21, 381 P.2d 302, *Dineen v. Sullivan* (1949), 123 Mont. 195, 213 P.2d 241.

As a third point, the Schwedes say the contract is not invalid under the statute of frauds because of partial performance, both by the Schwedes and the respondents. The acts of partial performance by Schwedes, relied upon by them, are that they secured financing and offered (but did not pay) the full purchase price to respondents' attorney. They further claim *respondents* partially performed by withholding their property from the market while the parties were negotiating, obtaining a title report and hiring an attorney to close the deal.

It appears to us that appellants have failed to distinguish between acts undertaken in *contemplation of eventual perform-ance*, and acts which truly constitute part performance of a contract. Acts undertaken by a party under the first category are not such part performance of the contract as to take it out of the operation of the statute of frauds. Here, the actions of Schwedes in obtaining financing and offering to pay the full amount, with nothing further, did not constitute part performance of the contract.

Claimed acts of partial performance sufficient to taken an otherwise unenforceable contract out of the statute of frauds must be unequivocally referable to that contract. *Throndson v. Commissioner of Internal Revenue* (Cal.1972), 457 F.2d 1022. The sufficiency of acts to constitute such part performance can be decided as a matter of law. *Boesiger v. Freer* (1963), 85 Idaho 551, 381 P.2d 802. Such acts as obtaining financing and making studies of the real property have been held insufficient part performance to preclude the defense of the statute of frauds. *Gene Hancock Construction Co. v. Kempton & Snedigar Dairy* (Ariz.1973). 20 Ariz. App. 122, 510 P.2d 752, 755.

The action of *respondents* relied on by Schwedes are acts undertaken in *contemplation of eventual performance* of the contract. Again, these do not constitute part performance to remove

the operation of the statute of frauds. Further, the acts of the respondents may not be relied upon by Schwedes because in order to remove the contract from the operation of the statute of frauds; a party may rely only on his part performance and not on the purported partial performance of others.

". . . So, it is often laid down as a general rule that the acts relied upon as part performance to remove a parol agreement for the sale of lands from the operation of the Statute of Frauds must have been performed by the parties seeking to enforce the agreement. Part performance by the parties sought to be charged does not take an agreement out of the Statute of Frauds. Since the basis of the doctrine of part performance is to prevent a fraud upon the plaintiffs, it is true as a general proposition, that if a party who resists the enforcement of a contract chooses not to stand on what he has done under and in pursuance of it, the other party cannot be aided by it." 73 Am.Jur.2d 38 *Statute of Frauds* § 411.

The final issue of Schwedes is that respondents are estopped to deny the validity of the contract between them. Again Schwedes rely on the actions they claim constitute part performance as above set forth, and further upon the fact that it was respondents' attorney who told the Schwedes not to pay the purchase price on September 20, 1976, but to do it at a later closing date.

This contention is inapplicable and can be answered simply by quoting the comment in 56 A.L.R.3d at 1054, regarding *Sinclair v. Sullivan Chevrolet Co.* (Ill.1964), 45 Ill. App.2d 10, 195 N.E.2d 250, affirmed 31 Ill.2d 507, 202 N.E.2d 516, as follows:

". . . [T]he court explicitly stated that where a case is clearly within the statute of frauds, promissory estoppel is inapplicable, for the net effect would be to repeal the statute completely. The court cited [a] general rule that the moral wrong of refusing to be bound by an agreement because it does not comply with the statute of frauds, does not of itself authorize the application of the doctrine of estoppel, because the breach of a promise which the law does not regard as binding is not a fraud. The court also stated that acts performed in contemplation of the contract are not considered as suffi-

cient part performance to bring the case within any exception to the statute of frauds, or to permit the application of doctrine of estoppel. . . ."

Usually the court will apply the doctrine of promissory estoppel to suspend the statute of frauds only in those situations when the statute would otherwise operate to perpetrate a fraud. 56 A.L.R.3d 1037, 1056. Such is not the case here.

For the foregoing reasons, the summary judgment granted by the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEA concur.