No. 83-541

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

NORWEST BANK BILLINGS, f/d/b/a
FIRST NORTHWESTERN BANK,

        Plaintiff and Respondent,

  -vs-

JAMES W. MURNION,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sandall, Cavan & Smith, Billings, Montana

    For Respondent:

        John K. Addy, Billings, Montana

_____

Submitted on Briefs:  March 15, 1984

Decided:  June 14, 1984

Filed:  JUN 14 1984

<br>

_____
              Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Defendant James Murnion appeals from a judgment rendered against him in the District Court of the Thirteenth Judicial District, Yellowstone County. We affirm.

On August 14, 1979, James Murnion purchased a Trojan front-end loader from Montana Machine Inc., in Billings, Montana. The purchase is evidenced by a retail installment contract and security agreement prepared and dated August 15, 1979. The contract shows a cash price of $17,500 for the loader and a $5,500 allowance for a trade in by Murnion of a diesel tractor, to be applied against the cash price of the loader, thus leaving an unpaid balance of $12,000. Murnion agreed to pay this amount plus about $1,870 in interest in four installments between December 1, 1979 and July 1, 1981. The contract was signed by Murnion and Howard Hanson, president of Montana Machine. The contract lists plaintiff First Northwestern National Bank (now Norwest Bank) as Montana Machine's assignee with full recourse.

Murnion did not make the first installment due under the contract, and in January, 1980, was deemed to have defaulted. The bank exercised its right to require Montana Machine to repurchase the contract. Instead of repurchase, Montana Machine entered into a second contract with Murnion. This new agreement converted the original installment payment scheme into a single payment due December 1, 1980. The agreement was signed by Montana Machine and Murnion, and Montana Machine assigned this contract to the bank with right of full recourse.

Murnion did not make the December 1 payment, and on

December 31, the Bank notified Murnion of the deficiency and requested that he make some arrangements for payment. On January 6, 1981, a meeting was held at the office of Montana Machine between Murnion and Howard Hanson. Paul Borisevich, dealer program supervisor for the Bank, was also in attendance during portions of this meeting.

Murnion claims to have confronted Hanson during the meeting about a material misrepresentation involving the loader. According to Murnion, the serial number on the loader indicated that the machine was approximately ten years older than had been represented to him by Hanson. Murnion maintains that he discovered this discrepancy while attempting to obtain parts for the loader from a parts dealer in Billings. Murnion asserts that he wanted to rescind his contract with Montana Machine because of this alleged misrepresentation.

Hanson supposedly conceded that a misrepresentation had been made, but allegedly reached an oral agreement with Murnion to rectify the problem and renegotiate the sales contract. Under the terms of this alleged oral agreement, Murnion agreed to pay an additional sum of money on the loader contract and use the machine until Hanson picked it up in April for resale. If sale of the loader brought more than the balance due on the contract, Murnion would be paid the excess. If the sale brought less than the balance due, Murnion would not be held liable for the deficiency.

A third written contract was prepared on January 6, the day of the meeting, calling for Murnion to pay in cash approximately $2,467 of the $13,471.40 owed under the last agreement, with the remaining $11,004 to be paid at fifteen

-3-

percent interest on September 1, 1981. The total sum due amounted to $12,241.50. The contract, a form document supplied by the Bank, was prepared by Paul Borisevich and signed by Murnion and Hanson, with the latter's interest being assigned to the bank. A brief description of the loader and the payment terms were filled in by Borisevich. There is no mention of the terms of Murnion's and Hanson's alleged oral agreement.

Murnion insists that Borisevich was present during those portions of the meeting when the alleged misrepresentation was discussed and when the negotiation of the terms of the oral agreement took place. During trial, Borisevich testified that he recalled a conversation about the "age" of the loader, but he never characterized the conversation as one about misrepresentation about age. Borisevich also testified that he was aware of no terms or conditions in the agreement between Murnion and Hanson other than those that appear in the January 6 written contract.

During the spring of 1981, Borisevich did contact some implement dealers and bank customers about the possibility of purchasing Murnion's loader to help Murnion raise revenue to pay off the contract. Some of the dealers and customers contacted Murnion, but none desired to purchase the loader. The bank did not act as an intermediary between Murnion and the prospective buyers, and did not discuss with Murnion any absorption by the bank of any deficiency arising from resale.

Sometime prior to the September 1 payment date, Montana Machine Inc. went out of business, and Howard Hanson moved to Australia. Murnion did not make the September 1

payment. The bank notified Murnion of his default, and urged him to speak to bank officials concerning the outstanding debt. On September 28, 1981, Murnion signed a deferral agreement with the bank, agreeing to pay the outstanding balance February 1, 1982, for an additional $918 consideration.

Murnion did not remit the unpaid balance, so the bank brought this action in May 1982. Murnion did not answer the complaint, and the bank filed a praecipe for entry of default. Default was entered in July of 1982, but the District Court, upon motion of defendant, eventually set aside the default in November, 1982. Murnion then filed an answer, wherein he admitted signing the January 6 contract but denied owing the unpaid balance specified therein. Murnion asserted an affirmative defense of misrepresentation and failure of the bank to resell the loader as allegedly agreed.

The case came to trial in August 1983. The only witnesses were Paul Borisevich, appearing on behalf of the Bank, and Murnion, appearing on his own behalf. Murnion was permitted to testify, over the bank's continuing objection, to the terms of the oral agreement. The bank also objected to admission of evidence of the contracts signed prior to January 6, 1981, but the real dispute involves the terms of the oral agreement. Both objections were based on the parol evidence rule. In addition, Murnion was permitted to testify, over the bank's objection, to the allegations of misrepresentation. This objection was based on the rule against hearsay. The court heard all of Murnion's testimony, reserving the right to strike it when deciding

the case.

The trial court rendered judgment for the bank. In its findings and conclusions, the court concluded that the bank's objections to the prior and contemporaneous agreements were valid, and disallowed the evidence. The court ordered Murnion to pay the $12,241.50 unpaid balance plus interest of fifteen percent and reasonable attorney's fees. Murnion appeals from the District Court judgment.

Murnion raises the following three issues:

(1) Whether the trial court erred by disallowing the evidence of contemporaneous and prior agreements offered by Murnion?

(2) Whether the trial court erred by failing to consider evidence of the contemporaneous oral agreement in order to permit Murnion to prove unconscionability?

(3) Whether the trial court erred by failing to apply Section 31-1-231, MCA, dealing with the requirements for a retail installment contract, to the facts of this case?

THE PAROL EVIDENCE ISSUE

In resolving this dispute, the trial court applied the traditional parol evidence rule, codified at Section 28-2-904, MCA, which provides that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." With the adoption of the Uniform Commercial Code, however, litigation arising out of a transaction like that involved here should be controlled by the principles of the Code, with the law of

-6-

contract being used only to supplement Code provisions. Section 30-1-103, MCA. The loader in this case comes within the Code definition of "goods." See Section 30-2-105(1), MCA. Thus, the sale of the loader is governed by the Code and any Code provisions addressing the parol evidence question must be given primary consideration.

The relevant statute for this case is Section 30-2-202, MCA:

> "Final written expression--parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> "(a) by course of dealing or usage of trade (30-1-205) or by course of performance (30-2-208); and
>
> "(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

This statute, based on U.C.C. sec. 2-202 (1962), continues the operation of the traditional parol evidence rule, although with some modifications. See 2 R. Anderson, Uniform Commercial Code Section 2-202:3 (1982). Although the trial court should have used this provision, rather than Section 28-2-904, to resolve the instant dispute, the result remains the same. Where the conclusion of the District Court is correct, it is immaterial, for the purpose of affirmance on appeal, what reasons the District Court gives for its conclusion. Bolz v. Myers (Mont. 1982), 651 P.2d 606, 611, 39 St.Rep. 1747, 1752.

According to the provisions of Section 30-2-202, an initial determination must be made that the parties intended the final writing or contract to be the final expression of their agreement with respect to the terms included in the writing. If it is determined that the parties did not intend the writing to be final with respect to the terms expressed therein, parol evidence may be admitted, subject to the rules of evidence, to elucidate the true nature of the parties' agreement. If, however, the writing is deemed to be a final expression, then the trial court may consider evidence of terms of prior and/or contemporaneous agreements only if these terms do not contradict the terms of the writing. Parol evidence of terms of prior agreements or contemporaneous oral agreements may be admitted to explain or supplement the terms of the writing insofar as they relate to course of dealing, usage of trade, or course of performance, concepts specifically defined in the Montana version of the Uniform Commercial Code. In addition, parol evidence of "consistent additional terms" may be admitted to explain or supplement the writing unless the court concludes that the writing was intended as a "complete and exclusive statement of the terms of the agreement."

The parol evidence rule, as it appears in the law of contract and in the Uniform Commercial Code, is actually a principle of substantive law and not a procedural rule of evidence. Childers & Venters, Inc. v. Sowards (Ky. 1970), 460 S.W.2d 343, 345; 2 Anderson, supra, sec. 2-202:5. Thus, the admissibility of any evidence is ultimately subject to the provisions of the Montana Rules of Evidence. We also note that traditional common law exceptions to the parol

evidence rule, such as proof of fraud, misrepresentation, or mistake, remain exceptions to the parol evidence doctrine as codified in Section 30-2-202. See J. White & R. Summers, Uniform Commercial Code 88 (2d ed. 1982) and Section 30-1-103, MCA (law pertaining to fraud, misrepresentation and mistake supplements provisions of code unless displaced).

Applying Section 30-2-202 to the trial court's findings and conclusions in the instant dispute, we conclude that the result remains the same. We first decide whether the court's findings speak to the issue of whether the parties intended the January 6, 1981 contract to be their final expression of agreement with respect to the terms contained therein. The court found that Murnion, Hanson and the bank had indeed agreed to the terms stated in the contract, and that Murnion's promise to pay was "stated in plain and unequivocal terms and refers to no antecedent or contemporaneous agreements not reduced to writing." By implication, the court indicated that there was an appropriate degree of finality respecting the terms of the January 6 written contract.

Murnion is correct in stating that, under the Code version of the parol evidence rule, evidence of a writing which is final on some matters must not necessarily be construed to imply mean that the writing must be taken as including all the matters agreed upon. See Comment 1, Official Comments, U.C.C. sec. 2-202 (1962), incorporated into Montana Code Annotated (Annotations), section 30-2-202. Nevertheless, Murnion is incorrect in construing the Code version of the parol evidence rule so as to suggest that

practically _any_ evidence of outside agreements must be considered by the court.

Next, we determine whether the evidence offered by Murnion must be excluded from consideration, as the trial court concluded, because the evidence either contradicts the terms of the January 6 contract or does not explain or supplement the terms of that contract in the ways permitted by subsections (a) and (b) of Section 30-2-202. We note that, although the bank objected to consideration of all evidence of agreements prior to or contemporaneous with the January 6 contract, the real dispute centers on the alleged contemporaneous oral agreement to excuse Murnion from paying any deficiency due under the contract, primarily on account of the alleged misrepresentation. The trial court specifically rejected consideration of this evidence. This is the correct result under Section 30-2-202. To the extent that evidence of the terms of this alleged oral agreement between Murnion and Hanson are accepted as true, it definitely contradicts the clear and unequivocal promise to pay as stated in the January 6 contract, and must be excluded as a matter of law.

The kind of parol evidence offered by Murnion respecting the alleged oral agreement can be excluded on grounds that it is not credible, even though the Code version of the parol evidence rule does not speak directly to this proposition. See J. White & R. Summers, supra, at 77, citing C. McCormick, Handbook of the Law of Evidence 440 (1954). Although the trial court did not address the issue of Murnion's credibility, his trial testimony is uncorroborated and contradictory. Furthermore, Murnion

could never explain, either under direct or cross-examination, why the January 6 contract and the September deferral agreement do not make reference to any of the terms of the oral agreement allegedly made in January contemporaneous with the signing of the contract.

Even if we could construe the terms of this alleged oral agreement to be non-contradictory, we would still find them inadmissible under subsections (a) and (b) of Section 30-2-202. The terms are clearly not the kind contemplated by Section 30-1-205, MCA as evidence of "course of dealing and useage of trade," or by Section 30-2-208, MCA, as "course of performance." Nor can they be deemed "consistent additional terms." According to Comment 3 of the Official Comments to U.C.C. sec. 2-202, incorporated as part of the annotations to Section 30-2-202, if "the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact." Here, the trial court recognized the obligation imposed on Murnion by the January 6 contract. The court had before it evidence of Murnion's subsequent default and September, 1981 agreement to make good on the debt by February, 1982. By implication, had the terms of the alleged January agreement been confirmed by Murnion and the bank, it seems likely that these terms would have been incorporated into the January 6 contract or the subsequent deferrel agreement. Evidence of the terms should therefore be excluded as a matter of law. Braund, Inc. v. White (Alaska 1971), 486 P.2d 50, 56; 2 Anderson, supra, Section 2-202:18.

Murnion's defense of misrepresentation is not sufficient to surmount the hurdle of the parol evidence rule. While it is true that the January 6 contract contains language to the effect that the bank, as holder of the contract, takes the contract subject to all defenses which Murnion can assert against Montana Machine, Inc., this presumes the existence of a _valid_ defense. Here, although the trial court does not refer to the allegations of misrepresentation, none of this evidence was admissible as a matter of law. The only evidence of misrepresentation came through the hearsay testimony of Murnion. As such, the evidence was clearly inadmissible. See Rule 802, Mont.R.Evid. Murnion offered no independent evidence pointing to misrepresentation. The parts dealer who allegedly alerted Murnion to the possibility of misrepresentation did not testify.

Murnion portrayed himself as one well-aquainted with heavy equipment, and claimed knowledge that serial numbers are an indication of age of equipment. During cross-examination, he indicated that the loader's serial number tag, with the correct number listed on it, was on the loader the day he purchased it in 1979. In any event, Murnion failed as a matter of law to present a valid defense of misrepresentation that would protect him against the bank's claim.

In summary, we hold that, under the circumstances of this case, the parol evidence rule as embodied in Section 30-2-202, MCA, barred admission of evidence of the alleged contemporaneous oral agreement of January 6, 1981. We stress again that this is the same result reached by the

trial court using Section 28-2-904, MCA.

## THE UNCONSCIONABILITY ISSUE

Murnion argues that the evidence of the contemporaneous oral agreement was admissible under Section 30-2-302(2), MCA to prove unconscionability of the contract. The trial court did not discuss this matter in its findings and conclusions, but the omission is of no consequence.

Murnion's argument concerning unconscionability actually involves the alleged misrepresentation of the age of the machine and the unsupported assertion that every party to the contract was aware of this "fact." Because the evidence of misrepresentation was inadmissible as a matter of law on hearsay grounds, and because there is no independent evidence for the trial court to consider, Murnion cannot press the unconscionability issue. We note that this particular issue was not raised in the pretrial order signed by the parties, and that it was brought to the trial court's attention after the hearing in Murnion's post-trial memorandum.

## THE PROPRIETY OF THE JANUARY 6 CONTRACT UNDER THE RETAIL INSTALLMENT SALES ACT

Here, Murnion argues that the January 6 contract does not state the true cash sales price of the loader and does not describe the buyer's downpayment in sufficient detail, violations of Section 31-1-231(5)(a) and (b), MCA. This issue, also raised after trial in the defendant's post-trial memorandum, is without merit. There is no dispute that the January 6 agreement represents a renewal of earlier

obligations which are evidenced by writings and which were offered into evidence by Murnion himself. All the written agreements, taken together, adequately described all the relevant terms of purchase and payment for the loader, such that the relevant provisions of Section 31-1-231 are satisfied. It is more than a little questionable for Murnion to challenge the legality of a contract when the other documents supplementing and explaining it were known to him.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

-14-