FILED

12/13/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0014

DA 16-0014

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 324

S & P BRAKE SUPPLY, INC.,

      Plaintiff and Appellee,

   v.

STEMCO LP,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 12-1533
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robert C. Griffin, Crowley Fleck PLLP, Billings, Montana

      For Appellee:

      Michael F. McGuinness, Patten, Peterman, Bekkedahl & Green, PLLC,
Billings, Montana

                    Submitted on Briefs:  October 26, 2016

                            Decided:  December 13, 2016

Filed:

                /S/ ED SMITH
                 Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 S&P Brake Supply, Inc. (S&P) sued STEMCO LP (STEMCO) for breach of an alleged oral contract for a five-year arrangement to produce and sell remanufactured brakes. STEMCO claimed that the statute of frauds barred the oral contract and that the parol evidence rule precluded evidence of its formation. The District Court denied STEMCO's motions for summary judgment and judgment as a matter of law. A Yellowstone County jury found in favor of S&P and awarded damages on the oral agreement. STEMCO appeals. We restate the issues on appeal as follows:

*1. Whether the District Court erred in denying STEMCO's motion for summary judgment because the alleged oral contract was barred by the statute of frauds;*

*2. Whether the District Court erred in submitting the questions of part performance and promissory estoppel to the jury;*

*3. Whether the District Court abused its discretion in excluding evidence proffered by STEMCO to rebut S&P's breach of contract and damages claims;*

*4. Whether the District Court erred in denying costs to STEMCO for prevailing on its counterclaim.*

¶2 We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3 S&P is a Montana corporation that remanufactures brakes for semi-truck vehicles. STEMCO is a Texas company with a division that manufactures replacement brake parts, including brake linings. On March 2, 2011, STEMCO and S&P representatives met to discuss entering into a business relationship. The two parties agreed that S&P would become a "STEMCO authorized remanufacturer." This meant that STEMCO would sell

2

its brake linings to S&P, S&P would remanufacture brakes using the STEMCO brake linings, S&P would label the remanufactured brakes as STEMCO products, and then S&P would sell the remanufactured brakes to certain "STEMCO authorized distributors"—companies to which STEMCO permitted its "authorized remanufacturers" like S&P to sell the remanufactured brakes. At the meeting, S&P's president signed a STEMCO "Authorized Brake Remanufacturer Program Agreement" (Program Agreement), which STEMCO required in order for S&P to become an "authorized remanufacturer."

¶4 The parties dispute whether the Program Agreement served as a final expression of their agreement and therefore constituted a contract. S&P alleged that, at the March 2011 meeting, STEMCO guaranteed S&P the right to sell remanufactured brakes to STEMCO authorized distributors in a five-state region for a period of five years. Among those authorized distributors was Kenworth Sales Company (Kenworth), with locations in Utah and Idaho. Following the meeting, S&P made substantial expenditures on new inventory and equipment, a new trailer, a commercial lease for additional warehouse space in Salt Lake City, and additional employees. S&P asserted that it made these expenditures in reliance on STEMCO's promise that S&P could sell remanufactured brakes to Kenworth for five years.

¶5 For roughly the next year and a half, S&P remanufactured brakes using STEMCO brake linings and sold those brakes to Kenworth. In about August 2012, Kenworth broke ties with S&P and instead began purchasing its remanufactured brakes from a company

3

called Gorilla Brake, another STEMCO authorized remanufacturer. S&P sued STEMCO for breach of contract, among other claims. S&P argued that STEMCO violated the terms of the parties' alleged oral five-year contract by allowing Gorilla Brake to replace S&P as Kenworth's supplier of remanufactured brakes.

¶6 STEMCO moved for summary judgment. It argued that the statute of frauds rendered the alleged oral contract unenforceable. STEMCO contended further that the terms of the oral contract contradicted the terms of the Program Agreement, and thus that the parol evidence rule barred S&P from introducing evidence of the oral contract. The District Court denied STEMCO's motion in part, concluding that genuine issues of fact existed as to whether S&P could satisfy an exception to the statute of frauds and whether the Program Agreement constituted a final expression of the parties' agreement such that the parol evidence rule would apply.

¶7 At trial, the District Court instructed the jury, over STEMCO's objections, on the doctrines of part performance and promissory estoppel as possible exceptions to the statute of frauds. The court rejected STEMCO's proposed instruction on promissory estoppel that would have included a requirement that S&P prove that STEMCO intentionally misled S&P. The District Court also excluded certain evidence that STEMCO offered to rebut S&P's claim for damages and to show that S&P lost Kenworth's business as a result of its own inadequate service rather than anything STEMCO did.

¶8 At the close of S&P's case in chief, STEMCO moved for judgment as a matter of law, contending that insufficient evidence existed to allow a reasonable jury to find that any exception to the statute of frauds applied to the alleged oral contract.[1] The District Court denied the motion, concluding that sufficient evidence existed to support a jury finding that either the part performance or promissory estoppel exception applied. The jury found for S&P and awarded it $344,532 in damages.

¶9 The jury also found in favor of STEMCO on its counterclaim against S&P for $63,990.48 worth of inventory it delivered to S&P but for which S&P had not paid. Each party submitted a bill of costs. The court awarded costs to S&P, but denied costs to STEMCO, reasoning that although STEMCO prevailed on its counterclaim, it was not entitled to costs because it did not prevail on the "main issue in controversy."

**STANDARDS OF REVIEW**

¶10 We review de novo a district court's ruling on summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3). *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 256, ¶ 10, 385 Mont. 156, 381 P.3d 555. We review a district court's conclusions of law to determine whether they are correct. *Citizens for a Better Flathead*, ¶ 10.

¶11 Whether judgment as a matter of law should be granted or denied is a question of law, and therefore the appropriate standard of review is de novo. *Johnson v. Costco*

---

[1] The parties refer in their briefs to STEMCO's M. R. Civ. P. 50(a) motion for "directed verdict." This Court no longer uses the term "directed verdict," but instead applies Rule 50's term, "judgment as a matter of law." *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 3 n.1, 288 Mont. 1, 955 P.2d 160.

*Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. Judgment as a matter of law is proper only when there is a complete absence of any evidence that would justify submitting an issue to a jury; all such evidence and any legitimate inferences that might be drawn from the evidence must be considered in the light most favorable to the party opposing the motion. *Johnson*, ¶ 13.

¶12 A district court has discretion when it decides how to instruct the jury, and this Court will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Cechovic v. Hardin & Assocs.*, 273 Mont. 104, 116, 902 P.2d 520, 527 (1995). Although a district court has broad discretion, the principle that jury instructions must fully and fairly instruct the jury regarding the applicable law limits its discretion. *Goles v. Neumann*, 2011 MT 11, ¶ 9, 359 Mont. 132, 247 P.3d 1089.

¶13 A district court has broad discretion in determining whether evidence is relevant and admissible. *Stokes v. Ford Motor Co.*, 2013 MT 29, ¶ 11, 368 Mont. 365, 300 P.3d 648. We thus review evidentiary rulings for an abuse of discretion. *Stokes*, ¶ 11.

¶14 We review for correctness a district court's determination whether a party is statutorily entitled to costs. *Total Indus. Plant Servs. v. Turner Indus. Grp., LLC*, 2013 MT 5, ¶ 61, 368 Mont. 189, 294 P.3d. 363.

**DISCUSSION**

¶15 *1. Whether the District Court erred in denying STEMCO's motion for summary judgment because the alleged oral contract was barred by the statute of frauds.*

¶16 The District Court denied STEMCO's motion for summary judgment on the grounds that genuine issues of fact existed as to whether the Program Agreement

6

constituted the final expression of the parties' agreement and what the terms of the parties' agreement were. The court reasoned also that genuine issues of fact existed as to whether S&P could demonstrate that statutory and equitable exceptions shielded the alleged oral contract from the statute of frauds.

¶17 STEMCO argues that it was entitled to summary judgment because the Program Agreement constituted a final expression of the parties' agreement and the parol evidence rule barred evidence of the alleged oral contract. STEMCO contends that the doctrines of part performance and promissory estoppel do not exempt the alleged oral contract from the statute of frauds. Even if promissory estoppel could be invoked, STEMCO claims that Montana law permits the doctrine to defeat the statute of frauds only when the party asserting promissory estoppel shows that the promisor engaged in fraud or intentional deception, which S&P did not allege.

¶18 The parties agree that the Uniform Commercial Code (UCC) applies to their contractual relationship, but they also cite to general contract law to support their arguments. The UCC applies to "transactions in goods." Section 30-2-102, MCA. "Goods" include "all things . . . which are movable at the time of identification to the contract for sale." Section 30-2-105, MCA. The agreement between the parties involves the sale of brake linings from STEMCO to S&P and the sale of remanufactured brakes from S&P to Kenworth. The brake linings and remanufactured brakes constitute moveable goods under § 30-2-105, MCA. The alleged oral contract thus pertains to "transactions in goods" and falls within the ambit of the UCC. Section 30-2-102, MCA.

¶19 Montana's UCC statute of frauds governs contracts for transactions in goods. It provides,

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought.

Section 30-2-201(1), MCA. It is undisputed that the goods transacted between the parties exceeded $500 in price.

**A. Whether the Program Agreement was a final expression of the parties' agreement.**

¶20 When the parties have entered into a written agreement and one party asserts the existence of an additional oral contract, the UCC parol evidence rule may apply to bar evidence of the alleged oral contract. That rule provides,

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

Section 30-2-202, MCA. This statute requires that a court make an "initial determination" whether the parties intended a written document to constitute the final expression of their agreement. *Norwest Bank Billings v. Murnion*, 210 Mont. 417, 423, 684 P.2d 1067, 1071 (1984). The presence of a "clear and unequivocal promise" in writing may indicate the parties' intent that the writing constitutes a final expression of their agreement. *Norwest Bank Billings*, 210 Mont. at 426, 684 P.2d at 1072.

8

¶21 The parol evidence rule bars evidence of oral agreements only "when the terms of a written agreement indicate the intent of the parties that the written memorialization represents the complete and final agreement between the parties." *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 46, 317 Mont. 236, 77 P.3d 175. "If it is determined that the parties did not intend the writing to be final with respect to the terms expressed therein," then the parol evidence rule does not apply, and a court may admit parol evidence "to elucidate the true nature of the parties' agreement." *Norwest Bank Billings*, 210 Mont. at 424, 684 P.2d at 1071. This is consistent with the principle that if the language of a purported contract is ambiguous, "a factual determination must be made as to the parties' intent in entering into the contract." *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851.

¶22 The Program Agreement S&P signed states in part, "*To qualify* for the STEMCO Duroline CRM Program, you hereby agree to the following." (Emphasis added.) The document then lists five policies that STEMCO requires its "authorized remanufacturers" to follow. The Program Agreement provides also, "To get more information or *to become an authorized brake remanufacturer*, contact your local STEMCO Duroline Regional Sales Manager. This program is subject to change, or may be discontinued at any time." (Emphasis added.)

¶23 The District Court held that the Program Agreement's language creates doubt as to whether the parties intended it as a "final expression of their agreement with respect to such terms as are included therein." Section 30-2-202, MCA. The language indicates

9

that S&P would need to take further action in order to become an authorized brake remanufacturer. The document does not set forth any obligation assumed by STEMCO or reflect a "clear and unequivocal promise" between S&P and STEMCO. *Norwest Bank Billings*, 210 Mont. at 426, 684 P.2d at 1072. We agree with the court's "initial determination" that the Program Agreement did not clearly evidence a final expression of the parties' agreement. *Norwest Bank Billings*, 210 Mont. at 423, 684 P.2d at 1071.

¶24 Once the court made this initial determination, it properly denied summary judgment and allowed the jury to consider evidence "to elucidate the true nature of the parties' agreement." *Norwest Bank Billings*, 210 Mont. at 424, 684 P.2d at 1071. The District Court did not err in concluding that a genuine issue of fact existed on the question whether the Program Agreement represented a final expression of the parties' agreement.

**B. Whether STEMCO was entitled to summary judgment on S&P's claim that part performance exempted the alleged oral contract from the statute of frauds.**

¶25 The District Court declined to award summary judgment to STEMCO on this ground because STEMCO had not adequately briefed the issue. Because the court allowed this claim to go to the jury, we address it later in this Opinion.

**C. Whether the promissory estoppel doctrine was available to S&P as a matter of law.**

¶26 The District Court also held that a genuine issue of fact existed as to whether S&P could satisfy one or more exceptions to the statute of frauds. STEMCO argues that the

10

promissory estoppel doctrine was not available to S&P as a matter of law, and thus that it should have been awarded summary judgment.

¶27    The statute of frauds provides that a contract that does not satisfy the writing requirement still may be enforceable under certain enumerated circumstances.  Section 30-2-201(3), MCA.  The statute does not explicitly name promissory estoppel as an exception.  But a separate UCC provision, titled "Supplementary general principles of law applicable," provides, "Unless displaced by the particular provisions of this code, the principles of law and equity, including . . . estoppel . . . shall supplement its provisions."  Section 30-1-103, MCA.

¶28    Relying on § 30-1-103, MCA, this Court has allowed estoppel to be raised to defeat the statute of frauds in a UCC case.  *N.W. Potato Sales v. Beck*, 208 Mont. 310, 317, 678 P.2d 1138, 1141 (1984).  In *Northwest Potato Sales*, we held that estoppel by silence applied to enforce an oral contract otherwise barred by the UCC statute of frauds.  *N.W. Potato Sales*, 208 Mont. at 317, 678 P.2d at 1141.  We reasoned that "[t]he UCC expressly mentions estoppel as one of the general principles of law that supplement the UCC (Section 30-1-103, MCA), unless other parts of the UCC expressly displace that principle.  Here no provision of the UCC states that estoppel cannot be applied to defeat a statute of frauds defense."  *N.W. Potato Sales*, 208 Mont. at 315-16, 678 P.2d at 1140-41.  We observed that equitable estoppel, promissory estoppel, and estoppel by silence all are recognized doctrines under Montana law that "blend with each other."  *N.W. Potato Sales*, 208 Mont. at 316-17, 678 P.2d at 1141 (citing *Keil v. Glacier Park, Inc.*,

11

188 Mont. 455, 614 P.2d 502 (1980)). Although we observed that the facts also "may fit . . . equitable estoppel," we rested our decision on estoppel by silence, the theory applicable in that case. *N.W. Potato Sales*, 208 Mont. at 317, 678 P.2d at 1141. We did not address whether promissory estoppel might also apply to enforce a contract otherwise barred by the UCC statute of frauds. *N.W. Potato Sales*, 208 Mont. at 317, 678 P.2d at 1141.

¶29 Outside the UCC context, we have held that where a contract clearly is within the statute of frauds, promissory estoppel is inapplicable, unless the statute would otherwise operate to perpetuate a fraud. *Schwedes v. Romain*, 179 Mont. 466, 473-74, 587 P.2d 388, 392 (1978). We decided *Schwedes* under general contract law principles. *Schwedes*, 179 Mont. at 470-71, 587 P.2d at 390-91. "With the adoption of the Uniform Commercial Code, however, litigation arising out of a transaction" for the sale of goods "should be controlled by the principles of the Code, with the law of contract being used only to supplement Code provisions." *Norwest Bank Billings*, 210 Mont. at 422-23, 684 P.2d at 1070. Here, the alleged oral contract pertains to transactions in goods, and the principles of the UCC apply. The statutes governing contracts generally, found in Title 28, MCA, do not contain a provision like § 30-1-103, MCA. Our holding in *Schwedes*, which applies to transactions covered by general contract law, therefore is not determinative. Contrary to our holding in *Schwedes*, we had "no difficulty" in *Northwest Potato Sales* concluding that estoppel may apply to a UCC statute of frauds transaction, based on § 30-1-103, MCA. *N.W. Potato Sales*, 208 Mont. at 315, 678 P.2d at 1140.

12

¶30     A majority of jurisdictions have adopted the rule that promissory estoppel may remove an oral contract from the requirements of the UCC statute of frauds. 10 Samuel Williston, *A Treatise on the Law of Contracts* § 27:18, 250 (Richard A. Lord ed., 4th ed. 2011); *e.g.*, *B&W Glass v. Weather Shield Mfg.*, 829 P.2d 809, 814 (Wyo. 1992); *Allied Grape Growers v. Bronco Wine Co.*, 249 Cal. Rptr. 872, 878 (Cal. Ct. App. 5th 1988). These jurisdictions rely on UCC § 1-103 (the equivalent of § 30-1-103, MCA), which states, "Unless displaced by the particular provisions of this code, the principles of law and equity, including . . . estoppel," may supplement the UCC's provisions. The majority jurisdictions reason that because promissory estoppel is not explicitly displaced by any particular provision of the UCC, § 1-103 allows for promissory estoppel to supplement the UCC statute of frauds. *See, e.g.*, *B&W Glass*, 829 P.2d at 814 (citing *Allen M. Campbell Co., Gen. Contractors, Inc. v. Va. Metal Indus., Inc.*, 708 F.2d 930 (4th Cir. 1983); *Ralston Purina Co. v. McCollum*, 611 S.W.2d 201 (Ark. Ct. App. 1981); *Potter v. Hatter Farms, Inc.*, 641 P.2d 628 (Or. Ct. App. 1982)).

¶31     In addition, courts from other jurisdictions have cited our holding in *Northwest Potato Sales* as support for the proposition that promissory estoppel—not just estoppel by silence—may serve as an exception to the UCC statute of frauds. *Hoffmann v. Boone*, 708 F. Supp. 78, 81 (S.D.N.Y. 1989); *B&W Glass*, 829 P.2d at 818.

¶32     We have referred to other jurisdictions when interpreting a "uniform act" in order to "effectuate the general purpose of making uniform the [law] among states enacting it." *McCone Cnty. Fed. Credit Union v. Gribble*, 2009 MT 290, ¶ 23, 352 Mont. 254,

13

216 P.3d 206. We find the reasoning of these courts persuasive and consistent with our own previous construction of § 30-1-103, MCA. Like other forms of estoppel, promissory estoppel is not "displaced by the particular provisions" of the UCC. Section 30-1-103, MCA.

¶33 We therefore conclude that promissory estoppel may apply to remove a transaction from the UCC statute of frauds. The District Court thus did not err in denying STEMCO summary judgment and allowing the question whether S&P could satisfy the promissory estoppel exception to proceed to trial.

¶34 *2. Whether the District Court erred in submitting the questions of part performance and promissory estoppel to the jury.*

¶35 Having concluded that the Program Agreement did not clearly evidence the final expression of the parties' agreement, the District Court permitted S&P to introduce evidence at trial of the alleged oral contract over STEMCO's ongoing objection. At the close of S&P's case in chief, the District Court denied STEMCO's motion for judgment as a matter of law, reasoning that sufficient evidence existed to warrant the jury in finding that both the promissory estoppel and part performance exceptions applied to the alleged oral contract. STEMCO argues that the statute of frauds rendered the alleged oral contract unenforceable and that neither the part performance nor the promissory estoppel exceptions applied to this case.

### A. Part Performance

¶36 STEMCO argues that the part performance exception to the statute of frauds does not apply to the alleged oral contract. STEMCO asserts that even if the part performance

doctrine did apply, S&P's actions after the creation of the alleged oral contract did not constitute part performance. S&P argues in response that it made substantial investments in reliance on the contract, and that these investments constituted S&P's part performance of the contract.

¶37 Among the enumerated exceptions to the UCC statute of frauds, a contract that does not satisfy the writing requirement still may be enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted." Section 30-2-201(3)(c), MCA. The comments to the Montana UCC explain that "'[p]artial performance' as a substitute for the required memorandum can validate the contract *only* for the goods which have been accepted or for which payment has been made and accepted." Section 30-2-201, MCA, cmt. 2 (emphasis added).

¶38 S&P's theory was that STEMCO promised that S&P would retain the right to sell remanufactured brakes to Kenworth for a period of five years. S&P argued that because it invested heavily in inventory, facilities, equipment, and personnel in reliance on the oral agreement, STEMCO should not be allowed to repudiate the agreement because it was not in writing. S&P relies on cases outside the UCC to argue that partial performance may render an oral contract enforceable. *See Morton v. Lanier*, 2002 MT 214, 311 Mont. 301, 55 P.3d 380; *Quirin v. Weinberg*, 252 Mont. 386, 830 P.2d 537 (1992); *Somont Oil Co. v. Nutter*, 228 Mont. 467, 743 P.2d 1016 (1987). But "litigation arising out of a transaction" for the sale of goods, like the transaction here, "should be controlled by the principles" of the UCC. *Norwest Bank Billings*, 210 Mont. at 422,

15

684 P.2d at 1070. Unlike estoppel, the principle of partial performance is "displaced by the particular provisions of [the UCC]." Section 30-1-103, MCA. The "part performance" exception to the UCC statute of frauds is much more limited than the part performance doctrine outside the UCC context. STEMCO's alleged promise for a five-year arrangement does not pertain to "goods for which payment has been made and accepted or which have been received and accepted." Section 30-2-201(3)(c), MCA. S&P thus cannot rely on a "partial performance" exception to exempt the alleged oral contract from the UCC statute of frauds.

¶39 The District Court erred in denying STEMCO's motion for judgment as a matter of law to the extent that it relied on the part performance exception.

### B. Promissory Estoppel

¶40 STEMCO challenges the District Court's determination that sufficient evidence existed to support a jury finding that S&P met the required elements of promissory estoppel. STEMCO contends that S&P was required to demonstrate that STEMCO intended to mislead S&P and that no such evidence was offered.

¶41 S&P presented testimony at trial from Joe Smith, a STEMCO representative, that Smith met with S&P's owner, Joe Hoppman, to discuss making S&P an authorized remanufacturer. Smith testified that he guaranteed Hoppman that if S&P became an authorized remanufacturer, S&P would retain the right to sell remanufactured brakes to Kenworth for a period of five years. S&P introduced evidence of the investments it made after the alleged oral contract was formed, and offered testimony that such investments

16

were made in reliance on STEMCO's promise. Hoppman and S&P's sales manager, Tony Parish, testified that they told Smith prior to the formation of the oral contract that S&P would have to invest a substantial amount of money in brake parts, remanufacturing equipment, and additional storage space in Salt Lake City in order to meet Kenworth's demand for remanufactured brakes. S&P presented testimony that when it lost Kenworth's sales, S&P incurred substantial economic losses in the form of wasted overhead expenses on excess inventory, lost sales, and a long-term lease on a warehouse it no longer needed.

¶42 STEMCO argued that the evidence was insufficient because promissory estoppel requires a showing that the promisor intended to mislead the promisee. It proposed an instruction that would have included a requirement that "STEMCO had an intent to mislead S&P Brake Supply, or a willingness that S&P Brake Supply would be deceived, and S&P Brake Supply was misled to the extent that applying the statute of frauds would operate to perpetrate a fraud."

¶43 The District Court denied STEMCO's proposed instruction. It instructed the jury that the promissory estoppel doctrine served as an exception to the statute of frauds and that S&P had to prove the following elements: "(1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise was made; (3) reasonableness and foreseeability of the reliance; and (4) the party asserting the reliance must be injured by the reliance." STEMCO argues on appeal that the court erroneously refused its instruction on a fifth element.

¶44 This Court has held that a party asserting promissory estoppel must prove four elements: a clear and unambiguous promise, reliance by the promisee, reasonableness and foreseeability of the reliance, and resulting injury to the promisee. *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 24, 366 Mont. 285, 291 P.3d 1082 (citing *Keil*, 188 Mont. at 462, 614 P.2d at 506). We held in *Northwest Potato Sales* that estoppel by silence requires an additional showing of an intent to mislead, because "mere silence cannot work an estoppel." *N.W. Potato Sales*, 208 Mont. at 317, 678 P.2d at 1141. But, although they are related doctrines, equitable estoppel, promissory estoppel, and estoppel by silence are "three legally distinct estoppel claims," and we have "created multi-factor tests for each of those three distinct estoppel claims." *Turner*, ¶ 22. Unlike estoppel by silence, promissory estoppel requires an express "clear and unambiguous" promise. *Turner*, ¶ 24. This element obviates the concern about "mere silence" working an estoppel. The elements of promissory estoppel are distinct from the elements of estoppel by silence. We declined in *Turner* to "merge" the elements of equitable estoppel and promissory estoppel, *Turner*, ¶ 23, and we decline here to merge the elements of promissory estoppel and estoppel by silence. Our case law establishes that promissory estoppel does not require a showing of an intent to mislead. The District Court thus "fully and fairly instruct[ed] the jury" on the elements of promissory estoppel. *Goles*, ¶ 9. It did not abuse its discretion in refusing STEMCO's proposed instruction. *See Goles*, ¶ 9.

18

¶45    We conclude that the District Court properly submitted S&P's promissory estoppel claim to the jury.

¶46    *3.    Whether the District Court abused its discretion in excluding evidence proffered by STEMCO to rebut S&P's breach of contract and damages claims.*

¶47    STEMCO attempted to elicit testimony at trial regarding "core credits" that S&P owed to Kenworth.  Kenworth accumulated "core credits" by delivering used brake "cores" to S&P, which in turn used the cores in its brake remanufacturing process.  S&P would credit Kenworth's account balance for the value of these cores.  STEMCO sought to introduce testimony that S&P owed unpaid "core credits" to Kenworth and that S&P had failed to provide Kenworth with "core credit reports" in a timely manner.  STEMCO attempted further to elicit testimony and admit evidence regarding the sales that Gorilla Brake, S&P's replacement, made to Kenworth after Kenworth broke ties with S&P.

¶48    The District Court prohibited STEMCO from eliciting testimony that S&P owed money to Kenworth in the form of these "core credits."  The court reasoned that this issue was not relevant to the case at hand, and that it did not wish to "open the door to trying a case concerning S&P and Kenworth."  The District Court also excluded testimony and evidence of Gorilla Brake's sales to Kenworth, reasoning that such evidence was irrelevant and that its prejudicial effect outweighed its probative value.

¶49    STEMCO argues on appeal that the District Court erred by excluding evidence and testimony of the "core credits" S&P owed to Kenworth and of Gorilla Brake's sales of remanufactured brakes to Kenworth.  It contends that evidence of the "core credits" S&P owed to Kenworth was relevant to rebut S&P's claim of lost profits by showing that

19

S&P owed money to Kenworth. This evidence was relevant also, in STEMCO's view, to show that S&P lost Kenworth's business as a result of its own poor service rather than as a result of STEMCO's alleged breach of contract. STEMCO claims that the District Court's exclusion of this evidence prejudiced its ability to demonstrate that S&P lost Kenworth's business because of S&P's own failings and not because of STEMCO's conduct.

¶50 STEMCO argues that the evidence of Gorilla Brake's sales to Kenworth was relevant to rebut S&P's damages claim. S&P had based its lost profits calculation on its history of sales to Kenworth. STEMCO contends that Gorilla Brake's actual sales of remanufactured brakes to Kenworth would have provided a more accurate basis for calculating the sales S&P could have expected to make to Kenworth had it kept Kenworth's business.

¶51 Montana law provides that relevant evidence is generally admissible. M. R. Evid. 402. But relevant evidence "may be excluded if its probative value is substantially outweighed by . . . confusion of the issues, . . . misleading the jury, . . . [or] waste of time." M. R. Evid. 403. A district court does not abuse its discretion in excluding evidence that it reasonably determines is "not probative of the central issues in the case" and "would likely lead to unnecessary confusion." *Tarlton v. Kaufman*, 2008 MT 462, ¶ 39, 348 Mont. 178, 199 P.3d 263. Even if a court abuses its discretion in an evidentiary ruling, that abuse "does not necessarily constitute reversible error." *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P.2d 427. A court's exclusion of evidence

constitutes reversible error only if "a substantial right of the party is affected." M. R. Evid. 103(a). We have held that a substantial right of a party is not affected unless the challenged evidence is "of such character to have affected the result" of the case. *In re A.N.*, ¶ 55 (citation and internal quotation omitted).

¶52 Here, the District Court concluded that evidence of the "core credits" that S&P owed to Kenworth and of Gorilla Brake's sales to Kenworth did not directly pertain to the central issue in the case—a breach of contract dispute between S&P and STEMCO. Kenworth and Gorilla Brake were not parties to the action. The court expressed concern that allowing STEMCO to introduce evidence regarding S&P's business dealings with Kenworth or Kenworth's transactions with Gorilla Brake would consume a substantial amount of time and lead to a mini-trial about issues collateral to the case. The District Court's rulings are entitled to broad deference on appeal. *Stokes*, ¶ 11.

¶53 The District Court did not prevent STEMCO from introducing evidence to support its contention that S&P lost Kenworth's business as a result of its own failings rather than anything STEMCO did. The court permitted STEMCO to introduce an email from Mike McKay, a Kenworth employee, to Tony Parish, S&P's sales manager, in which McKay complained about S&P's failure to provide "core reports" upon request. McKay notified Parish of Kenworth's dissatisfaction with S&P and suggested that S&P might lose Kenworth's business as a result. The court admitted deposition testimony from McKay and another Kenworth employee, William Peterson, that Kenworth stopped buying

21

remanufactured brakes from S&P because of the poor quality of the brakes and because of S&P's delays in shipping product to Kenworth.

¶54 Despite the District Court's exclusion of some of STEMCO's proferred evidence, STEMCO was able to present a defense that S&P lost Kenworth's business because of S&P's own failings and not because of STEMCO's actions. STEMCO has not persuaded us that the court's exclusion of evidence affected its substantial rights or the outcome of the case. *See* M. R. Evid. 103(a); *In re A.N.*, ¶ 55. The court likewise did not abuse its discretion in determining that evidence of the "core credits" S&P owed to Kenworth and of Gorilla Brake's sales to Kenworth would have confused the issues, was not relevant to the central issues in the case, and was therefore inadmissible. *See Stokes*, ¶ 11.

¶55 *4. Whether the District Court erred in denying costs to STEMCO for prevailing on its counterclaim.*

¶56 The District Court awarded costs to S&P, but denied them to STEMCO. The court reasoned that even though STEMCO prevailed on its counterclaim, S&P prevailed on the "main issue in controversy"—its breach of contract claim against STEMCO. The court thus concluded that S&P was the only party entitled to costs.

¶57 STEMCO argues that the District Court erred in failing to award costs to STEMCO. In STEMCO's view, it was entitled to costs because the jury awarded it the full balance of its counterclaim.

¶58 Montana law provides that "[c]osts are allowed, of course, to the plaintiff upon a judgment in the plaintiff's favor in the following cases: . . . (3) in an action for the recovery of money or damages, exclusive of interest, when plaintiff recovers over $50."

22

Section 25-10-101(3), MCA. We have held that if "a party initiates a law suit [sic], the defendant counterclaims, and the judgment awards both parties part of the relief they seek, the party prevailing on the main issue in controversy in the case must be allowed costs." *Medhus v. Dutter*, 184 Mont. 437, 447, 603 P.2d 669, 674 (1979).

¶59 S&P initiated the breach of contract lawsuit against STEMCO, and STEMCO counterclaimed. The judgment awarded "both parties part of the relief they [sought]." *Medhus*, 184 Mont. at 447, 603 P.2d at 674. The jury's verdict awarded S&P relief on the breach of contract claim but not on STEMCO's counterclaim. Likewise, STEMCO did not prevail on all of its claims. It lost the argument that it did not breach an oral contract with S&P. That was the theory that led to a net judgment in favor of S&P. S&P prevailed "on the main issue in controversy in the case"—its claim that STEMCO breached an oral contract. *Medhus*, 184 Mont. at 447, 603 P.2d at 674; *cf. Rod & Rifle Inn v. Giltrap*, 273 Mont. 232, 236, 902 P.2d 38, 41 (1995) (holding that where jury found neither party entitled to recover damages, defendant prevailed on the main issue in controversy by defeating plaintiff's claim for breach of contract damages). As such, S&P was entitled to costs. *Medhus*, 184 Mont. at 447, 603 P.2d at 674; *see also Lewistown Miller Constr. Co. v. Martin*, 2011 MT 325, ¶ 32, 363 Mont. 208, 271 P.3d 48 (holding that where plaintiff obtained a net judgment in its favor and defendant won on its counterclaim, defendant was not the prevailing party and was not entitled to contractual attorney fees). Because STEMCO did not prevail on the main issue in controversy, it

was not entitled to costs. The District Court was correct in denying costs to STEMCO. *See Total Indus. Plant Servs.*, ¶ 61.

## CONCLUSION

¶60  We conclude that the statute of frauds did not bar the alleged oral contract. The District Court correctly determined that a genuine issue of fact existed as to the parties' intent in entering into an agreement. The court properly admitted evidence of STEMCO's promise that formed the alleged oral contract. Although the court improperly submitted the question of part performance to the jury, the evidence was sufficient for the court to allow the jury to consider promissory estoppel. The court correctly instructed the jury on the four elements of promissory estoppel and properly refused STEMCO's proposed instruction including a fifth element of intent to mislead.

¶61  We conclude further that the District Court did not abuse its discretion in excluding STEMCO's proffered evidence of "core credits" and Gorilla Brake's sales, based on its conclusion that the evidence was not probative of the central issues in the case and was likely to confuse the jury. Finally, STEMCO did not prevail on the main issue in controversy—the breach of contract claim—and therefore was not entitled to costs.

¶62  The District Court's judgment is affirmed.

/S/ BETH BAKER

24

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE