Donald H. ALBRECHT and Jo Anne Albrecht, Appellants (Plaintiffs),

v.

ZWAANSHOEK HOLDING EN FINANCIERING, B.V., a Netherlands corporation; and Zwaanshoek Bouw–En Exploitatiemaatschappij, B.V., a Netherlands corporation, Appellees (Defendants).

No. 90–263.

Supreme Court of Wyoming.

Aug. 23, 1991.

Petition and Cross–Petitions for Rehearing Denied Sept. 25, 1991.*

\* Justice Cardine would have granted a rehearing.

Marilyn S. Kite, Donald I. Schultz, and James Belcher of Holland & Hart, Cheyenne, and William E. Murane and Alison L. Ruttenberg of Holland & Hart, Denver, Colo., for appellants.

Charles G. Kepler of Simpson, Kepler & Edwards, Cody, Leo P. Larkin, Jr. and Kenneth L. Miller of Rogers & Wells, New York City, and John A. Karaczynski of Rogers & Wells, Los Angeles, Cal., for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellants Donald Albrecht and Jo Anne Albrecht appeal from the district court's dismissal of their claims against Appellees Zwaanshoek Holding En Financiering, B.V. and Zwaanshoek Bouw-en Exploitatiemaatschappij, B.V. for the wrongful retention and conversion of collateral which Appellants provided as security for a promissory note.

We reverse and remand.

Appellants raise the following issues:

1. Whether principles of *res judicata* bar claims based on facts occurring after entry of a prior judgment and involving issues not addressed in the prior judgment.

2. When a creditor bids in the full amount due under a nonrecourse note at the foreclosure sale of one item of collateral, does the creditor lose his security interest in other collateral securing the note?

3. Is a creditor's retention of collateral for over a year while making no attempt to dispose of it pursuant to U.C.C. Art. 9, § 5 (Wyo.Stat. § 34-21-960 *et seq.*) commercially unreasonable?

4. When a creditor retains possession of collateral for over a year after his security interest has been extinguished and this continued retention is wrongful by operation of U.C.C. Art. 9, § 5, must a plaintiff allege a demand for return of the collateral to state a cause of action for conversion?

5. When a creditor has wrongfully retained one item of collateral worth more than the redemption price of other foreclosed collateral, does a court have the equitable power to extend the redemption period until after the defendants have been ordered to return the wrongfully retained collateral?

6. Under Wyo.Stat. § 1-18-103, must a debtor tender cash to redeem his property, when the statute contains no such requirement?

As a result of prior business ventures, Appellants, as debtors, executed a nonrecourse promissory note with Appellees for $2 million. The promissory note stated that it "shall bear no interest." Appellants secured payment of the promissory note with a junior mortgage on a ranch located in Teton County, Wyoming, and a pledge of 75,000 shares of common stock in Wyomivest, Inc. Appellants delivered to Appellees a stock certificate representing the 75,000 shares. Appellants defaulted on the promissory note, and Appellees commenced an action to obtain a judgment on the promissory note and to foreclose the mortgage on the ranch. The district court granted a summary judgment in favor of Appellees, and Appellants appealed to this Court. In *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988), we affirmed the portion of the

district court's decision granting a judgment for Appellees on the promissory note and foreclosing the mortgage. Following our mandate, the district court entered a judgment in favor of Appellees for $2,663,-928.72. That figure equaled the amount due on the promissory note plus the interest which, under the terms of the promissory note, began to accrue after Appellants' default. A foreclosure sale was held, and Appellees bought the ranch for $2,323,-396.95. Because of the difference between the sale price and the amount of the judgment, Appellees filed a motion with the district court to confirm the sale and to award a deficiency judgment. The district court confirmed the sale and granted a deficiency judgment to Appellees for $165,-266.60.

On the last day of the statutory redemption period, Appellants filed the complaint which led to this appeal. Appellees responded by filing a motion to dismiss pursuant to W.R.C.P. 12(b)(6). After Appellants received leave from the court, they filed an amended complaint. The complaint alleged, *inter alia*, that Appellees retained control of the stock, which Appellants pledged as security, until after Appellants filed their complaint and that, after Appellants defaulted on the promissory note, Appellees had an obligation to sell the stock in a commercially reasonable manner, to provide notice of their intent to retain the stock in full satisfaction of all claims of indebtedness, or to return the stock to Appellants. As a result of Appellees' wrongful retention of the stock, Appellants claimed they were entitled to one or more of the following forms of relief: an order declaring Appellants had redeemed the ranch, an extension in the redemption period, forgiveness of the deficiency judgment, damages for conversion of the stock and possession of the stock, damages for their loss of the use of the stock during the period of time Appellees wrongfully retained the stock, and reasonable attorneys' fees and costs.

Once again, Appellees filed a motion to dismiss pursuant to W.R.C.P. 12(b)(6). The district court granted Appellees' motion stating that Appellants were attempting to relitigate issues resolved by its previous deficiency judgment and such attacks were inappropriate because of the doctrine of *res judicata*, that Appellants did not have any ownership rights in the real property because they did not redeem within the statutory redemption period, and that Appellants failed to allege any other grounds upon which the district court could grant relief. This appeal followed.

■ We apply the standard of review articulated in *Mostert v. CBL & Associates*, 741 P.2d 1090, 1092 (Wyo.1987) (quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 734 (Wyo.1979)):

> According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." Dismissal is a drastic remedy, and is sparingly granted.

(Citations omitted.)

### Merger

■ Appellants argue that, once Appellees obtained a judgment on the promissory note, the promissory note merged with the judgment and that their rights to collateral securing the promissory note were extinguished. The merger doctrine is related to the doctrines of collateral estoppel and *res judicata* and is utilized to prevent excessive litigation. *Brenton State Bank of Jefferson v. Tiffany*, 440 N.W.2d 583 (Iowa 1989). Restatement (Second) of Judgments § 18 at 151–52 (1982) states the general rule of the doctrine as follows:

> When a valid and final personal judgment is rendered in favor of the plaintiff:
>
> (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; * * *

The underlying debt is not discharged for all purposes, however, and "[t]he creditor retains the right to enforce a lien or gain

possession of property held as collateral for the debt." *Brenton State Bank of Jefferson,* 440 N.W.2d at 585. *See also* Restatement (Second) of Judgments, *supra* at comment g. In addition, use of the doctrine should be tempered by considerations of equity and justice. 46 Am.Jur.2d, *Judgments* § 382 (1969).

We hold that Appellees' rights to the stock were not extinguished when they obtained a judgment on the promissory note. The parties entered into an agreement by which Appellants' payment of the promissory note was secured by the mortgage on the ranch and the pledge of the stock. Once Appellants defaulted on the promissory note, Appellees could use that pledge to satisfy the indebtedness. A contrary result would be inconsistent with the merger doctrine and would promote an unjust result.

■ Appellants also argue that their obligation was satisfied when Appellees submitted a successful bid on the ranch for the full amount of the promissory note. To resolve this question, we examine the terms of the promissory note and the pledge agreement. In the promissory note, Appellants agreed to pay $2 million. The promissory note also stated that Appellants were not obligated to pay interest on the debt and that the agreement to pay was secured by the stock. In the event of a default, the promissory note called for interest to begin to accrue. To effectuate that agreement, the parties entered into a pledge agreement by which Appellants pledged the stock as security for payment on the promissory note. The pledge agreement stated that the stock would serve as security for sums due under the promissory note.

We hold that, because Appellants' obligation to pay the $2 million was interest free, the stock did not serve as collateral for the interest which the district court declared was due as a result of Appellants' default. The stock could have been used to enforce the judgment pursuant to Wyo. Stat. §§ 1–17–101 to –707 (1988) (the statutory provisions relating to the enforcement of judgments) but not pursuant to the promissory note or the pledge agreement. Once Appellees purchased the land and satisfied the $2 million debt, they no longer had a right under the terms of the promissory note or the pledge agreement to possess the stock.

### Conversion

Appellants argue that their amended complaint stated a claim under Wyoming's version of the Uniform Commercial Code—Secured Transactions (Article 9) against Appellees for maintaining possession of the stock in a manner which was commercially unreasonable. In the alternative, Appellants argue that the district court erred by dismissing their claim against Appellees for conversion.

■ In response, Appellees first contend that Article 9 is not germane to Appellants' allegations because it does not apply to transactions involving real estate. We agree that Article 9 does not apply to this appeal but not because the transaction at issue involved real estate. Wyo.Stat. § 34.1–9–501 (1991) delineates how a secured creditor may proceed under Article 9 when a debtor defaults. That section provides in pertinent part:

> (d) If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply.

A secured creditor proceeding against a defaulting debtor pursuant to a security agreement which covers real and personal property may be subject to Article 9.

■ Article 9 does not apply to this case, however, because Appellants' issues relate to events which occurred after the stock was no longer subject to a security interest. Wyo.Stat. § 34.1–9–102 (1991) states in pertinent part that Article 9 applies:

> (a) * * *
>
> (i) To any transaction (regardless of its form) which is intended to create a secur-

ity interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; * * *

* * * * * *

(b) This article applies to security interests created by contract including pledge * * *.

See 68 Am.Jur.2d, *Secured Transactions* §§ 47–177 (1973). Once the underlying obligation is satisfied, the security interest generally ceases to exist. 69 Am.Jur.2d, *Secured Transactions* § 529 (1973). At that point, the property which secured the indebtedness is no longer collateral, and the application of Article 9 becomes very limited.[1] Article 9 may still require the creditor to issue a termination statement or a release statement or to account for a surplus realized from the collection of an account or from the disposition of the collateral. Wyo.Stat. §§ 34.1–9–404, –406, –502, and –504 (1991). Except in the case of a surplus, Article 9 does not provide for the situation in which a creditor possesses the debtor's decollateralized property. Since Appellants' issues deal with such a situation and because the stock was not a surplus realized from the collection of an account or from the disposition of the stock, we hold that Article 9 does not apply to this appeal and turn to Appellants' claim for conversion.

■ In *Satterfield v. Sunny Day Resources, Inc.*, 581 P.2d 1386, 1388 (Wyo. 1978), *cert. denied* 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979), we discussed the tort of conversion:

Conversion is defined as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith. In order to recover damages in an action for conversion, a plaintiff's proof must show that:

(a) the plaintiff has a legal title;

(b) actual possession or the right to immediate possession at the time of conversion;

(c) defendant dealt with the property in some wrongful manner within the definition of conversion first stated;

(d) in cases where the defendant lawfully or without fault has come into possession of the property, then, with some exceptions, plaintiff must show that a demand has been made by plaintiff and that defendant has refused to return the property;

(e) value of property converted.

(Citation omitted.)

■ The parties do not dispute that Appellants' amended complaint alleges that Appellants have legal title to the stock, that they were entitled to possession of the stock during the period of time Appellees possessed the stock, that Appellees wrongfully retained the stock, and that the value of the stock exceeded $2,663,928.72. Appellees contend that Appellants' conversion claim is defective, however, because the amended complaint failed to allege that they made a demand for the return of the pledged stock. In *Satterfield*, 581 P.2d at 1389, the Court held, "Demand and refusal are merely evidential and need not be shown where another independent act of conversion is in evidence." That case dealt with oil field equipment which the defendant sold. The equipment was not the subject of a pledge agreement. The rule in regard to pledges is that, upon satisfaction of the original debt, the pledged property must be returned to the pledgor. Failure to return the pledged property constitutes a conversion. *Signer v. First National Bank & Trust Company of Covington, Kentucky*, 455 F.2d 382 (6th Cir.1971). An action for such a conversion "may be maintained without a distinct demand for the return of the property." 72 C.J.S., *Pledges* § 46 at 47 (1987). We hold that the return must be accomplished within a reasonable period of time. Thus, Appellants' complaint was not deficient because it failed to allege that Appellants made a demand for the return of the stock, and the district

---

1. Wyo.Stat. § 34.1–9–105(a)(iii) (1991) states:
 (iii) "Collateral" means the *property subject to a security interest,* and includes accounts and chattel paper which have been sold[.]

(Emphasis added.)

court erred by dismissing Appellants' conversion claim pursuant to W.R.C.P. 12(b)(6).

## Application of *Res Judicata*

 Appellees argue that Appellants' claims should be barred by the application of *res judicata* because Appellants are raising issues which were previously decided by the district court or which Appellants should have raised in prior actions. The doctrine of *res judicata* " 'constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action.' " *Osborn v. Manning*, 798 P.2d 1208, 1210 (Wyo.1990) (quoting *Barrett v. Town of Guernsey*, 652 P.2d 395, 398 (Wyo.1982)). The related doctrine of collateral estoppel "prevents 'relitigation of issues which were involved actually and necessarily in the prior action between the same parties.' " *Id.* (quoting *Delgue v. Curutchet*, 677 P.2d 208, 214 (Wyo.1984)). Neither doctrine applies if the facts have changed since the previous suit. *Id.*

Appellants' amended complaint focuses primarily on the assertion that Appellees retained the stock for an unreasonable period of time. At least some of the facts supporting that claim occurred after the parties' earlier litigation. Hence, the district court is faced with a new set of circumstances which prevents the application of the doctrines of *res judicata* and collateral estoppel.

## Statutory Redemption

 Appellants contend that the stock was worth more than the amount required to redeem the property and that Appellees' retention of the stock should be viewed as a payment of the redemption price pursuant to Wyo.Stat. § 1–18–103 (1988). In the alternative, Appellants assert that Appellees' wrongful retention of the stock entitles them to an equitable extension of the statutory redemption period.

Section 1–18–103 provides in pertinent part:

(a) Except as provided with respect to agricultural real estate, it is lawful for any person * * * whose real property has been sold by virtue of an execution, decree of foreclosure, or foreclosure by advertisement and sale within three (3) months from the date of sale, to redeem the real estate by paying to the purchaser * * * the amount of the purchase price or the amount given or bid if purchased by the execution creditor or by the mortgagee under a mortgage, together with interest at the rate of ten percent (10%) per annum from the date of sale plus the amount of any assessments or taxes and the amount due on any prior lien which the purchaser paid after the purchase, with interest. On payment of this amount the sale and certificate granted are void.

(b) In the case of any mortgage upon one (1) or more parcels of real estate any or all of which were agricultural real estate on the date of execution of the mortgage as stated in the mortgage, the period within which the owner * * * may redeem the premises sold is twelve (12) months from the date of the sale.

The parties do not dispute that the ranch is agriculture real estate.

 To resolve the argument that Appellees' retention of the stock was payment under § 1–18–103, we rely upon our well established principle that, "[i]f a statute is clear and unambiguous, we will not resort to rules of statutory construction, and the words will be given their plain and ordinary meaning." *Soles v. State*, 809 P.2d 772, 773 (Wyo.1991); *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo.1989). We hold that the plain meaning of the phrase "to redeem the real estate by paying to the purchaser * * * the amount of the purchase price" means that the redeemer must pay in money or its equivalent. Section 1–18–103(a). *See* 59 C.J.S., *Mortgages* § 852 (1949). Appellants' attempt to offset their claim to the stock against the cost of redemption does not suffice as a payment under § 1–18–103. In addition, we find no basis in § 1–18–103 to allow Appellants an extension of the redemption period. The statute clearly states that Appellants had twelve months in which to redeem. When Appellants failed to redeem in that period of time, the

sale of the ranch was, as far as Appellants are concerned, a *done deal.* *See* E. Rudolph, The Wyoming Law of Real Mortgages (1969).

### Waiver

■■■ Appellees argue that, on the basis of the following two paragraphs contained in the pledge agreement, Appellants expressly waived each of their claims. The first paragraph provides:

> Neither Assignee nor its designee shall incur any liability as a result of the sale or other disposition of the Collateral, or any part thereof, or for the failure to sell or offer for sale, or otherwise dispose of the Collateral or any part thereof for any reason whatsoever.

The second paragraph states in pertinent part:

> *Exculpation.* None of Assignee, its designee, or any of the directors, officers, agents or employees thereof shall be liable or responsible to Assignor or any of its affiliates for any action taken or omitted to be taken by it or any of them hereunder or under any related agreement, instrument or document except in the case of gross negligence or willful misconduct * * *.

The pledge agreement also states:

> *Termination.* This Agreement, and the rights of Assignee hereunder, shall terminate when all indebtedness secured hereby, and all obligations of Assignor hereunder, shall have been fully paid and satisfied, at which time, if requested, Assignee shall execute and deliver to Assignor for filing in each office in which any financing statement relative to the Collateral, or any part thereof, shall have been filed, a termination statement under the Uniform Commercial Code releasing Assignee's interest therein.

We must decide if Appellees' rights under the pledge agreement were terminated before the occurrence of the events which gave rise to Appellants' claim for conversion. Since the pledge agreement provides that it shall be construed by California law, we look to California's standards for contract interpretations. Section 1636 of the California Civil Code states that a contract should be interpreted to give effect to the mutual intent of the parties. If a contract is reduced to writing and if its language is clear and explicit, the court should ascertain the intent of the parties from the writing. Cal. Civil Code §§ 1638 & 1639 (West 1985).

We hold that the quoted waiver provisions do not apply to Appellees' retention of the stock after the $2 million obligation was satisfied. The pledge agreement states that it "shall terminate when all indebtedness secured hereby, and all obligations of Assignor hereunder, shall have been fully paid and satisfied." While the promissory note creates an obligation to pay $2 million and post-default interest, the pledge agreement secures only Appellants' payment of the original $2 million. The pledge agreement does not provide for or secure Appellants' payment of interest. The terms of the pledge agreement were terminated when the $2 million debt was satisfied, and the waiver provisions do not apply to Appellants' conversion claim.

Reversed and remanded for further proceedings in accordance with this opinion.

THOMAS, J., files a specially concurring opinion.

CARDINE, J., files a dissenting opinion.

THOMAS, Justice, concurring specially.

I recognize that, by their statement of issues and their arguments, the Appellants invited the court to dispose of certain issues in their favor. Consequently, they should not be heard to complain if some of those issues are decided adversely. Nevertheless, I am disposed to the view that, when confronted with an appeal from a dismissal pursuant to Rule 12(b)(6), W.R.C.P., the only function of this court is to determine whether the complaint states a claim upon which relief can be granted. In making that determination, the court must accept as true the facts alleged in the complaint. *E.g., Mummery v. Polk,* 770 P.2d 241 (Wyo.1989); *Champion Well Service, Inc. v. NL Industries,* 769 P.2d 382 (Wyo.1989); *Matthews v. Wyoming De-*

*partment of Agriculture,* 719 P.2d 216 (Wyo.1986); and *Carbon County School District No. 2 v. Wyoming State Hospital,* 680 P.2d 773 (Wyo.1984). While I recognize that there is judicial economy and efficiency in addressing the issues briefed and argued by the parties, I would hold in this case simply that the complaint alleged facts that, if accepted as true, state a claim upon which relief could be granted. I then would reverse and remand for development of the record with respect to any collateral issues prior to deciding those issues.

I agree that the case should be reversed, but the ground for the reversal, in my opinion, should be only that the complaint alleged facts sufficient to state a claim. I would then not address the other issues urged by the parties.

CARDINE, Justice, dissenting.

This is a case in which a debtor refused to pay a promissory note, refused to demand payment, refused to accept return of worthless collateral, claiming conversion to defeat the creditor. I must dissent from the unjust result of the majority decision which holds that there was a conversion by appellees of appellants' pledged stock. For two reasons there was no conversion. First, appellees had a continuing security in the pledged stock for unpaid interest, a lawful right to retain the stock and therefore no conversion. Second, there was no demand for return of the stock and, therefore, as a matter of law no conversion. The majority's opinion deprives appellees of the full benefit of their secured status. It charges appellees with conversion while ignoring appellants' own failure to request return of their stock.

I turn first to the problem of interest payments under the note. The majority admits that the promissory note signed by appellants called for interest payments in case of default. It correctly notes that the stock was given to serve as security for "sums due under the note." Because interest was due only in case of default, however, the majority concludes that, although default had occurred and interest was owed, once the principal only was paid, the

stock could not serve as security for the interest due. This conclusion is not supported by citations to any authority.

The question to be answered here is what obligation was secured by the shares of stock. Interest payments on a secured debt are generally considered part of the obligation secured by the collateral:

"On default the amount of what the Code calls the 'obligation secured' becomes of importance from two points of view. It determines the extent of the secured party's claim against the collateral and also determines the amount which the debtor must pay or tender in order to redeem the collateral or reinstate the security transaction. The basic obligation is the loan or debt which the transaction originally secured *plus interest.*" 2 Gilmore, Security Interests in Personal Property § 43.5 at 1199 (1965) (emphasis added).

Here, however, the majority appears to distinguish interest which is payable only on default from interest which is part of the basic obligation. As mentioned, the majority cites no authority for this distinction. However, the answer becomes clear if we begin from a basic principle of the Uniform Commercial Code that parties are free to contract for their own remedies except where they conflict with the Code. The agreement was made in California. The California Commercial Code provides that in the event of default

"a secured party has the rights and remedies provided in this chapter and * * * *those provided in the security agreement.*" Cal. Commercial Code § 9501 (West 1990) (emphasis added).

A similar provision is found in our statutes.

"(a) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part *and* except as limited by subsection (c) of this section *those provided in the security agreement.* * * * A secured party in possession has the rights, remedies and duties provided in section 34.1–9–207. The rights and remedies referred to in this subsection are cumulative.

"(b) After default, the debtor has the rights and remedies provided in this part, those provided in the security agreement and those provided in section 34.1–9–207.

"(c) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (sections 34.1–9–504(c) and 34.1–9–505) and with respect to redemption of collateral (section 34.1–9–506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable." W.S. 34.1–9–501 (emphasis added).

The security agreement and pledge executed by appellants in this case stated that "[t]he Collateral constitutes and will constitute continuing security for the prompt payment, as and when due and payable, of *all amounts owing to Assignee with respect to the Secured Note, now and hereafter outstanding.*" (emphasis added) It further gave the creditor the right on default

"to apply the Collateral, the proceeds thereof, and all monies representing the connection with the enforcement of the rights hereunder (including counsel fees) *in the manner set forth in the Secured Note * * *.*" (emphasis added)

The "interest-due-on-default" provision of the note was included in a paragraph concerning lender's remedies on default. Lender provided himself with two explicit remedies in case of default: (1) acceleration of the debt, and (2) accumulation of interest so long as the debt remained unpaid. This provision of the note read as follows:

"6. The whole of the principal sum of this Note shall immediately become due and payable, at the option of Lender, upon the failure of the Maker to pay any payment required hereunder within ten (10) days if the payment is made to a foreign account and within two (2) business days if a United States account has

been designated. Notwithstanding the preceding sentence, a default in the payment of any amount due hereunder may be cured within ten (10) days after the due date thereof by the payment of the amount so due. The outstanding principal balance hereof shall bear interest at the lesser of two (2) percent over the LIBOR Rate or the highest lawful rate per annum during the period in which this Note is in default. The LIBOR Rate shall be the six (6) month London Interbank Offered Rate as quoted to the London Branch of The Bank of America N.T. & S.A. at 11:00 A.M. London time on the date of default. The failure of Lender to exercise this option to accelerate the maturity of the principal sum hereof shall not constitute a waiver of such option, which option shall remain continuously in force."

Since these remedies were provided for by the security agreement, and since the security agreement stated that it was security for "all amounts owing * * * with respect to the Secured Note, now and *hereafter* outstanding" (emphasis added), it is plain from the language of the agreement that appellees were entitled to enforce the interest provision as part of the security interest on default.

The majority opinion deprives appellees of the benefit of secured status by improperly converting the accrued interest into an unsecured debt. It closes the secured party's door and sends a secured creditor away to our enforcement of judgment statutes for a remedy. The majority's decision will have negative results on the commercial practices of this state. Parties drafting promissory notes secured by collateral may be reluctant to defer interest accruable or provide for interest on default since the creditor may not hereafter look for payment to the collateral. We deprive the parties of flexibility in their financing arrangements, and for no reason.

Since I would include interest in the obligation secured by the stock, I must also disagree with the majority's conclusion that Article 9 of the Uniform Commercial Code does not apply to this case. The majority

claims that the underlying obligation has been satisfied by the foreclosure and therefore the security interest has ceased to exist and the stock is no longer collateral. However, since interest is included in the underlying obligation, and since the interest obligation has not been satisfied, the stock is still subject to a security interest for payment of the unpaid interest and of any other unpaid portions of the deficiency judgment. Appellees thereafter had a lawful right to retain the Wyomivest stock.

With respect to the conversion claim for failure to return the pledged stock, we have stated that an essential element of this claim, where the alleged tortfeasor acquired possession of the subject property lawfully, is that the claimant must allege and prove that he made demand for the return of the property and that the defendant in possession of the property refused to comply with his demand. *Satterfield v. Sunny Day Resources, Inc.*, 581 P.2d 1386, 1388 (Wyo.1978), *cert. denied* 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979). California law contains a similar requirement. *Minsky v. City of Los Angeles*, 11 Cal.3d 113, 113 Cal.Rptr. 102, 520 P.2d 726, 732 n. 7 (1974). Appellants failed to allege in their complaint that demand had been made. Therefore, the trial court properly dismissed their claim for conversion.

The failure of appellants to make demand for return of the stock is undisputed. In this case, the Albrechts made no demand for return of the Wyomivest stock throughout the statutory redemption period after the ranch foreclosure. In fact, counsel for appellees mailed the stock certificate and stock power back to Albrechts' counsel, but Donald Albrecht would not accept the stock, except to suggest that it be paid into the court for judicial disposition. Appellants waited until the day before the redemption period expired, not to request return of the stock, but to notify appellees that their "improper retention of the Wyomivest stock constituted full satisfaction" of appellees' claims. It would seem that Albrechts were interested in this stock only as a "bargaining chip" to use against appellees. It is patently unjust that appellees should be charged with conversion when appellants cared not enough about the stock to bother to ask for its return.

I would affirm the decision of the trial court.