Justice Beth Baker delivered the Opinion of the Court.
***315 ¶1 Deneige Kapor appeals an order of the Thirteenth Judicial District Court, Yellowstone County, ruling as a matter of law that she has no right to claim surplus proceeds on the resale of her mobile home after she returned it to RJC Investment, Inc. ("RJC") when she could not make the payments. We restate the issues as follows:
1. Whether the District Court erred in determining that the release agreement Kapor signed terminated any further application of the Uniform Commercial Code;
2. Whether the District Court erred in determining that the release constituted an acceptance of the collateral in full satisfaction of Kapor's secured obligation; and
3. Whether the District Court correctly held that Kapor was equitably estopped from pursuing her claims.
We reverse the District Court's summary judgment order and remand for further proceedings.
*872 PROCEDURAL AND FACTUAL BACKGROUND
¶2 Kapor entered into an Installment Sale Contract and Security Agreement (the "Contract") with Cherry Creek Development, Inc. ("Cherry Creek") to purchase a mobile home in March 2009. The purchase price of the mobile home was $ 53,500. Cherry Creek retained a security interest in the mobile home to secure Kapor's payment obligations. Kapor paid $ 4,280 down and agreed to pay $ 544 per month for fifteen years to pay off the $ 49,220 balance.
¶3 Cherry Creek assigned the Contract to its parent company, RJC. On multiple occasions, Kapor defaulted on her payment obligations. In March 2015, Kapor voluntarily vacated the mobile home and allowed RJC to take possession of it. When Kapor returned the mobile home to RJC, she owed $ 39,791.80. Kapor signed a Full Release of Contract (the "Release"), under which she released all rights to the mobile home. The Release reads in full as follows:
I/We Deneige Phillips[1] herby [sic] release all rights to the manufactured home located at 4 Skeena St., Billings, MT 59105 described by serial number HX12359 am [sic] releasing myself and removing my name off the contract currently in place with ***316 RJC Investment, Inc. I am fully aware that by signing this I am completely removing my rights to all aspects of the home and I will not be entitled to any rights of this home and or refund of all money applied to the home including but not limited to the down payment, and all payments made on the home and the lot up to this day.
The Release was executed by Kapor and Roy Clause, the President of RJC.
¶4 RJC resold the mobile home in April 2015, without notice to Kapor, for $ 53,500, which Kapor alleges is $ 13,708.20 more than the principal she owed when she returned the mobile home. RJC did not refund any surplus to Kapor, and disputes that a surplus was in fact realized. Kapor sued RJC for failing to pay her the surplus allegedly realized on the resale of the mobile home as required by Article 9 of the Uniform Commercial Code ("U.C.C."). RJC moved for summary judgment, asserting that the Release terminated the underlying Contract and any further application of U.C.C. Article 9. RJC alternatively asserted that Kapor was equitably estopped from pursuing her claims because she made false representations that she would not pursue her rights under the U.C.C. by signing the Release.
¶5 The District Court granted RJC's motion for summary judgment on three separate and independent grounds: (1) U.C.C. Article 9 no longer applied after Kapor executed the Release; (2) even if U.C.C. Article 9 applied, the Release constituted an acceptance of the collateral in full satisfaction of the secured obligation; and (3) Kapor's execution of the Release was a representation that equitably estopped her from pursuing the lawsuit.
STANDARD OF REVIEW
¶6 We review de novo a district court's grant or denial of summary judgment, applying the criteria of M. R. Civ. P. 56. Yorlum Props. v. Lincoln County , 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). Where the material facts are undisputed, we "identify the applicable law, apply it to the uncontroverted facts, and determine who prevails." Yorlum Props. , ¶ 12. The determination whether a party is entitled to judgment on the facts is a conclusion of law, which we review for correctness. Yorlum Props. , ¶ 12.
***317 DISCUSSION
¶7 1. Whether the District Court erred in determining that the release agreement Kapor signed terminated any further application of the Uniform Commercial Code.
¶8 Kapor argues that the execution of the Release did not terminate RJC's duty *873 under § 30-9A-608(1)(d), MCA, to pay her the surplus proceeds from the resale of the mobile home. Kapor maintains that the plain language of § 30-9A-602(5), MCA, prohibited the parties from waiving or varying the U.C.C. rule that required RJC to account to Kapor for the surplus. RJC relies on § 28-1-1601, MCA, and common law to argue that the parties executed the release "in accordance with their express intention to discharge their obligations to one another and go their separate ways."
¶9 " 'The fundamental tenet of modern contract law is freedom of contract'-parties are free to 'agree to terms governing their private conduct as long as those terms do not conflict with public laws.' " Lenz v. FSC Secs. Corp. , 2018 MT 67, ¶ 17, 391 Mont. 84, 414 P.3d 1262 (quoting Arrowhead Sch. Dist. No. 75 v. Klyap , 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250 ). Under generally applicable laws of contract, a creditor may agree to extinguish a debtor's obligations through a release. Section 28-1-1601, MCA.
¶10 Montana first adopted the Uniform Commercial Code in 1963. 1963 Mont. Laws, ch. 264. The U.C.C. is meant "to simplify, clarify, and modernize the law governing commercial transactions." Section 30-1-102(1)(a), MCA. It must be liberally construed "to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties" and "to make uniform the law among the various jurisdictions." Section 30-1-102(1)(b), (c), MCA. The parties here do not dispute that the U.C.C. governed the original sale of the mobile home and underlying security agreement. The District Court relied on principles of general contract law when it concluded that the Release Kapor signed terminated the U.C.C.'s application because Kapor no longer was a debtor once she relinquished her interest in the mobile home. Citing Watters v. Guaranty National Insurance Company , 2000 MT 150, ¶ 39, 300 Mont. 91, 3 P.3d 626, the court reasoned that the Release was a discharge or settlement of Kapor's obligation and that Kapor's "removing [her] name off of the contract" eliminated any security interest. The court rejected the notion that the U.C.C. does not allow a mutual release.
¶11 Title 30, chapter 9A, part 6, MCA, governs default in secured ***318 transactions.[2] Sections 30-9A-608(1)(d) and -615(4)(a), MCA, provide that a "secured party shall account to and pay a debtor for any surplus" from proceeds of the sale of collateral. Section 30-9A-602(5), MCA, expressly forbids a debtor from waiving protections the U.C.C. provides for accounting for payment of surplus proceeds of collateral.
[I]n the context of rights and duties after default, our legal system traditionally has looked with suspicion on agreements that limit the debtor's rights and free the secured party of its duties.... The suspicious attitudes of the courts have been grounded in common sense. This section ... codifies this long-standing and deeply rooted attitude. The specific rights of the debtor and duties of the secured party may not be waived or varied except as stated.
Section 30-9A-602, MCA, cmt. 2.[3]
¶12 The U.C.C.'s introductory provisions provide in part that, "[u]nless displaced by the particular provisions of [the U.C.C.], the principles of law and equity ... shall supplement its provisions." Section 30-1-103, MCA. The Official Comments to § 30-1-103, MCA, provide that "while principles of common law and equity may supplement provisions of the [U.C.C.], they may not be used to supplant its provisions." Section 30-1-103, MCA, cmt. 2.1 (emphasis in original). Provisions of the U.C.C. preempt other principles of law even without "explicit displacement" in the code's text when those other principles are inconsistent with the purposes, policies, or text of the U.C.C. Section 30-1-103, MCA, cmt. 2.1. The U.C.C.'s provision regarding waiver and variance is specific and displaces general provisions of law regarding release, as it states expressly that a party may not waive her *874 right to recover surplus proceeds of collateral. Section 30-9A-602(5), MCA.
¶13 The District Court's analysis overlooked the operation of § 30-1-103, MCA. The parties are free to "discharge their obligations to one another and go their separate ways." See Lenz , ¶ 17. Except as allowed under other U.C.C. provisions, that discharge or release cannot, however, waive or vary RJC's duty to account for or Kapor's right to receive any surplus proceeds from the resale of the mobile home. The ***319 express statutory provision in the U.C.C. displaces other non-U.C.C. contract law that could result in a waiver of the duties or rights associated with the accounting for and payment of the surplus proceeds of collateral.
¶14 RJC's argument that the Release terminated application of the U.C.C. altogether also falters. When a debtor's underlying obligation is satisfied, the security interest generally ceases to exist, at which point the property that secured the indebtedness "is no longer collateral, and the application of Article 9 becomes very limited." Albrecht v. Zwaanshoek Holding En Financiering, B.V. , 816 P.2d 808, 813 (Wyo. 1991) (citing 68 Am. Jur. 2d, Secured Transactions , § 529 (1973) ). Cf. § 30-1-201(2)(jj), MCA (a security interest "secures payment or performance of an obligation"). But "Article 9 may still require the creditor to ... account for a surplus realized from the collection of an account or from the disposition of the collateral." Albrecht , 816 P.2d at 813. Kapor's relationship to RJC was one of debtor to creditor through a secured transaction governed by U.C.C. Article 9. When Kapor defaulted on her obligations under the Contract, RJC's rights and responsibilities as a creditor also were governed by U.C.C. Article 9. RJC's argument that Article 9 no longer governed the parties' relationship following execution of the Release is based on its representation that it agreed in the Release "to absolve [Kapor] from any further contractual obligation she owed to RJC." As support for this statement, RJC cites the affidavit of Roy Clause, not any language in the Release itself. The Release did not, by its express terms, lift the parties' relationship from that of debtor and creditor under U.C.C. Article 9 or render obsolete the protections afforded a debtor under §§ 30-9A-608(1)(d) and -615(4)(a), MCA. We conclude that the District Court erred when it granted RJC summary judgment on the ground that the U.C.C. no longer applied after Kapor signed the Release.
¶15 2. Whether the District Court erred in determining that the release constituted an acceptance of the collateral in full satisfaction of Kapor's secured obligation.
¶16 After a debtor defaults, a secured creditor in possession of the collateral has three options. First, the creditor may file suit on the obligation and reduce its claim to judgment. Section 30-9A-601(1)(a), MCA (a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest ... by any available judicial procedure"). Second, the creditor "may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing."
***320 Section 30-9A-610(1), MCA. Third, the creditor "may accept collateral in full or partial satisfaction of the obligation it secures[.]" Section 30-9A-620(1), MCA.
¶17 The District Court held in the alternative that the Release constituted RJC's acceptance of the collateral in full satisfaction of the secured obligation under § 30-9A-620(1), MCA.[4] Known as strict foreclosure, the statute sets forth "a procedure by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition" of the collateral. Section 30-9A-620, MCA, cmt. 2. When strict foreclosure occurs, the secured party loses its right to hold the debtor liable for any deficiency, and the debtor loses its right to a surplus that it would have received had the collateral been disposed of for more than the indebtedness. 9C Frederick H. Miller & Carl S. Bjerre, Uniform Commercial Code Series , § 9-620:1 [Rev] (2018).
¶18 Enacted in 1999, the provision replaced former § 30-9-505, MCA, to eliminate the requirement that the secured party present *875 a "proposal" for retention to which the debtor had a fixed time to respond. 1999 Mont. Laws, ch. 305, § 117. Under prior law, a secured party's delay in disposing of collateral often led to the debtor's claim that the creditor should be deemed to have elected to retain the collateral in satisfaction of the obligation. Courts adopted varying approaches to resolving such claims. See Drayer L. Bott, Commercial Law and Practice Guide ch. 32, § 32.03[2][b][ii] (Barry L. Zaretsky, Gerald T. McLaughlin, & Neil B. Cohen eds., 2018). Some courts held that "[a]n election to take the collateral in full satisfaction [of the debt] will not be implied; it must be made by written notice to the debtor." Chrysler Credit Corp. v. Mitchell , 94 A.D.2d 971, 464 N.Y.S.2d 96, 97 (1983). Others found that the secured party had made an implied election to retain the collateral in full satisfaction, either by an unreasonably long retention of collateral ( Bradford v. Lindsey Chevrolet Co. , 117 Ga.App. 781, 161 S.E.2d 904, 906 (1968) ) or by proof of the secured party's manifest intent to accept the collateral in satisfaction of the obligation ( Nelson v. Armstrong , 99 Idaho 422, 582 P.2d 1100, 1108 (1978) ). The new provision restricted the opportunity to seek implied strict foreclosure and "reflects the belief that strict foreclosures should be encouraged and often will produce better results than a disposition for all concerned." Section 30-9A-620, MCA, cmt. 2. ***321 ¶19 The strict foreclosure statute now provides in relevant part:
(1) Except as otherwise provided in subsection (7), a secured party may accept collateral in full or partial satisfaction of the obligation it secures only if:
(a) the debtor consents to the acceptance under subsection (3);
(b) the secured party does not receive, within the time set forth in subsection (4), a notification of objection to the proposal authenticated by:
(i) a person to which the secured party was required to send a proposal under 30-9A-621; or
(ii) any other person, other than the debtor, holding an interest in the collateral subordinate to the security interest that is the subject of the proposal;
(c) if the collateral is consumer goods, the collateral is not in the possession of the debtor when the debtor consents to the acceptance; and
(d) subsection (5) does not require the secured party to dispose of the collateral.
(2) A purported or apparent acceptance of collateral under this section is ineffective unless:
(a) the secured party consents to the acceptance in an authenticated record or sends a proposal to the debtor; and
(b) the conditions of subsection (1) are met.
(3) For purposes of this section:
(a) a debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default; and
(b) a debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default or the secured party:
(i) sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;
(ii) in the proposal, proposes to accept collateral in full satisfaction of the obligation it secures; and
(iii) does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.
Section 30-9A-620(1) - (3), MCA.
¶20 This section makes clear that "[a] purported or apparent acceptance" of the collateral is ineffective unless "the secured party ***322 consents to the acceptance in an authenticated record or sends a proposal to the debtor." Section 30-9A-620(2)(a). In turn, the debtor either must consent in writing to the "terms of the acceptance" after default or, if the creditor sends a written proposal for acceptance in full satisfaction, will be deemed to have consented if the debtor fails to notify *876 the creditor in writing within twenty days. Section 30-9A-620(3)(b), MCA. Like its statutory right to surplus, a debtor may not waive or vary the rules for acceptance of collateral in satisfaction of obligation provided in §§ 30-9A-620 through -622, MCA. Section 30-9A-602(10), MCA.
¶21 RJC does not claim that it sent Kapor a written proposal to accept the mobile home in full satisfaction of her obligation. But it argued in its summary judgment reply brief, and the District Court held, that the Release manifested Kapor's acceptance "in a record authenticated after default" in accordance with § 30-9A-620(3)(b), MCA.
¶22 Kapor argues that the Release cannot constitute a strict foreclosure because the Release does not contain any language waiving any of RJC's rights or claims. RJC counters that pursuant to the plain language of the Release RJC agreed to forego all of its rights to enforce any of the Contract provisions against Kapor to the same extent that she agreed to forego hers.[5]
¶23 Section 30-9A-620, MCA, was enacted to prescribe "the conditions necessary to an effective acceptance (formerly, retention) of collateral in full or partial satisfaction of the secured obligation." Section 30-9A-620, MCA, cmt. 2. The statute precludes "a mere delay in collection or disposition of collateral" from effectuating "a 'constructive' strict foreclosure." Section 30-9A-620, MCA, cmt. 5. The reason for eliminating "constructive" strict foreclosure was to prevent the debtor from seeking to bar a deficiency judgment when the creditor never agreed to acceptance in satisfaction of the debt. Section 30-9A-620, MCA, cmt. 5. The Official Comments emphasize that "[a] debtor's voluntary surrender of collateral to a secured party and the secured party's acceptance of possession of the collateral does not, of itself, necessarily raise an implication" that the secured party intended to accept the collateral in full satisfaction of the secured obligation. Section 30-9A-620, MCA, cmt. 5. Cf. § 30-9A-619(3) (transfer of legal title to collateral to a secured party "is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured ***323 party of its duties under this chapter.").
¶24 Absent the secured party's written proposal, subsection (3) requires that the debtor "agree[ ] to the terms of the acceptance[.]" Section 30-9A-620(3), MCA. "All that is required for strict foreclosure to occur is that the debtor agree to the acceptance of collateral in full satisfaction of the debt in writing after default and the secured party consent to satisfaction in an authenticated record." Peoples Bank v. Bluewater Cruising LLC , No. C12-00939RSL, 2014 WL 202105 at *4, 2014 U.S. Dist. LEXIS 6428 at *15 (W.D. Wash. Jan. 17, 2014) (citing RCW 62A.9A-620, U.C.C. cmt. 2, 3, 5). "Acceptance" is used in the text of the statute and throughout the Official Comments, referring to "acceptance of collateral in full satisfaction." Section 30-9A-620, MCA, cmt. 3. In other words, there must be mutual agreement between the parties; the statute does not allow a creditor to obtain a debtor's relinquishment of rights without accepting the collateral in satisfaction of the debt and waiving its right to pursue a deficiency.[6]
¶25 RJC reads more into the Release than what its plain language provides. The Release Kapor signed said precisely nothing about RJC's "acceptance," its waiver of rights or protections under the Contract, or Kapor's "satisfaction" of the debt. The Contract provided that the secured party had the right to "declare the entire unpaid balance of the purchase price, principal and accrued interest, immediately due and payable" upon Kapor's failure to cure a default within thirty *877 days of receiving written notice. The Contract also provided that the secured party "may as an alternative to any other remedy provide[d] at law or equity, terminate [the Contract] and retain all payments made as liquidated damages." The Release did not state that RJC accepted or consented to accept the collateral in full satisfaction of the debt. RJC did not include any language that it accepted the collateral in satisfaction of the obligation, that it released Kapor from all her obligations, or that it relinquished its right to pursue a deficiency judgment against her if the mobile home sold for less than the owed ***324 principal. The Release did not indicate that RJC was making commitments of any kind.
¶26 RJC's affidavit, submitted in support of its motion for summary judgment, contains the first mention that the Release was intended to "extinguish any further obligations [Kapor] would have to RJC under its terms[.]" The parol evidence rule prohibits the admission of extrinsic evidence to explain the intent of a contract when the parties have reduced their agreement to an unambiguous writing. Watters v. City of Billings , 2017 MT 211, ¶ 16, 388 Mont. 376, 404 P.3d 379. If a contract is ambiguous, however, evidence of the circumstances under which the agreement was made may be considered to determine the intent of the parties. Watters , ¶ 16 (citing Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc. , 2007 MT 159, ¶ 55, 338 Mont. 41, 164 P.3d 851 ). Language of a contract is "ambiguous only if susceptible to two or more conflicting meanings, both of which are objectively reasonable." Ash v. Merlette , 2017 MT 305, ¶ 13, 389 Mont. 486, 407 P.3d 304 (citing Mary J. Baker Revocable Trust , ¶ 20 ). RJC maintains that the "Release was anything but 'vague.' " This Court will not consider evidence presented for the sole purpose of establishing that a contract includes mutual understandings that were never incorporated into the written agreement when the agreement by its own terms is the entire agreement. Mary J. Baker Revocable Trust , ¶ 60. When interpreting a written instrument, the Court's role is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted[.]" Section 1-4-101, MCA.
¶27 Contrary to RJC's argument, the Release did not establish "RJC's acceptance" or set forth the terms of any such acceptance. Although explicit language may not be required, the document must indicate at least that RJC was giving up its right to seek a deficiency from Kapor or was accepting the collateral in full satisfaction of the obligation. The affidavit, executed after RJC had sold the mobile home for the alleged surplus and after Kapor had instituted this litigation, cannot supply new terms of the unambiguous Release that were omitted when the parties executed it. The District Court commented that parties to a secured transaction should be able to discharge their obligations to one another through a mutual release. True. But the single paragraph in the Release effects nothing more than a waiver of Kapor's rights under the Contract.
¶28 Given the specific process outlined in § 30-9A-620, MCA, the protections embodied in the uniform laws of the U.C.C., the fact that a debtor cannot waive its right either to a surplus or to the strict ***325 foreclosure procedures, and the protection the statute offers for both debtor and creditor, it is not unreasonable to require a purported release to include the secured party's "terms of acceptance" and the debtor's assent to those terms. Section 30-9A-620(3)(a), MCA. RJC cites no case in which a "release" as minimal as the one Kapor signed would be considered sufficient to meet strict foreclosure requirements, and relevant case law indicates that more is required. See, e.g. , Smith v. Cmty. Nat'l Bank , 344 S.W.3d 561, 572-73 (Tex. App. 2011) (holding that strict foreclosure under Article 9 requires "some mention [or implication] of the fact that the acceptance is in full or partial satisfaction of the obligation"); Peoples Bank, at *5, 2014 U.S. Dist. LEXIS 6428, at *16-17 (finding genuine issues of fact regarding strict foreclosure in creditor's deficiency action when neither a bill of sale nor a recorded satisfaction of mortgage clearly stated the creditor accepted the collateral in full satisfaction of the debt or that the debtor consented to the acceptance); *878 Royal Palm Senior Inv'rs, LLC v. Carbon Capital II, Inc. , No. 08 Cv. 4319 (BSJ), 2009 WL 1941862 at *3, 2009 U.S. Dist. LEXIS 57452, *11 (S.D.N.Y. July 7, 2009) (declining to allow remedy of strict foreclosure to secured creditor where parties' settlement agreement "did not set forth any terms by which [the creditor] would accept the collateral in satisfaction of the debt and [it] did not send written notice of any intention to do so"); In re CBGB Holdings, LLC , 439 B.R. 551, 553 (S.D.N.Y. 2010) (holding sufficient for strict foreclosure an agreement stating that secured party could, without further notice, foreclose on the collateral and " 'possess and retain' the collateral pursuant to the provisions of 'Section 962 [sic],' " and the debtor acknowledged that it had received sufficient notice under U.C.C. §§ 9-620 and -621 and waived any additional notice); Leroy Adventures v. Cafritz Harbour Grp. , 660 A.2d 908, 913 and 912 n.6 (D.C. Ct. App. 1995) (holding, under prior version of U.C.C., that debtor consented to strict foreclosure through settlement agreement clearly stating that the foreclosure was in full satisfaction of the debtor's obligation). Language that lacks specificity sufficient to bind the creditor to strict foreclosure likewise is insufficient to bind the debtor.
¶29 The Dissent faults the Court for failing to enforce the intent of the parties, but it was incumbent on RJC to make clear in the Release an intent to invoke strict foreclosure. As noted, RJC did not argue in its Brief in Support of Motion for Summary Judgment that it satisfied the requirements of § 30-9A-620, MCA. RJC argued instead that the case was controlled by non-U.C.C. contract law. It made no mention of the strict foreclosure doctrine until it filed its reply brief. Reply briefs filed in the district court must be confined to new matters raised in the ***326 response brief. WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC , 2015 MT 312, ¶ 20, 381 Mont. 333, 360 P.3d 1112 (applying M. R. App. P. 12(3) equally to district court reply briefs).[7] RJC's afterthought in reply that the Release's purpose satisfied the elements of strict foreclosure is further indication that RJC did not intend the Release to satisfy § 30-9A-620, MCA, when it was executed.
¶30 In the final analysis, the plain language of the Release disposes of the issue. Because the Release does not commit RJC to anything or release any of RJC's rights, and says nothing about acceptance of the collateral in full satisfaction of Kapor's debt, we conclude that RJC did not satisfy the elements of acceptance of collateral in full satisfaction under § 30-9A-620, MCA, and the District Court erred in granting RJC summary judgment on that ground.
¶31 3. Whether the District Court correctly held that Kapor was equitably estopped from pursuing her claims.
¶32 As a final alternative ground for summary judgment, the District Court determined that Kapor was equitably estopped from pursuing her claims. Kapor maintains that the District Court erred because equitable estoppel has been rejected in Montana U.C.C. cases. Section 30-1-103, MCA, however, expressly mentions estoppel as one of the general principles of law that can supplement the U.C.C. unless other U.C.C. provisions displace that principle. Our ruling in Avanta Federal Credit Union v. Shupak , 2009 MT 458, 354 Mont. 372, 223 P.3d 863, provides an example of one such displacement. We held there that U.C.C. Article 4 displaces a common-law equitable estoppel defense when applied to a bank's statutory "charge-back" remedy because Article 4 has a specific provision that expressly provides for both the charge-back right and the termination of that right. Avanta Fed. Credit Union , ¶ 34. But we held in *879 Northwest Potato Sales v. Beck , 208 Mont. 310, 317, 678 P.2d 1138, 1141 (1984), that estoppel by silence applied to enforce an oral contract otherwise barred by the ***327 U.C.C. statute of frauds. And recently we extended the application of promissory estoppel to U.C.C. cases. S & P Brake Supply, Inc. v. STEMCO LP , 2016 MT 324, ¶ 33, 385 Mont. 488, 385 P.3d 567. We conclude that the doctrine of equitable estoppel may apply to cases governed by the U.C.C. unless displaced by specific U.C.C. provisions. Unlike in Avanta Federal Credit Union , Kapor has not pointed to any U.C.C. provisions in Article 9 relevant to this case that displace equitable estoppel.
¶33 Equitable estoppel is a common law doctrine based on the principle that "a party cannot, through his intentional conduct, actions, language, or silence, induce another to unknowingly or detrimentally alter his position and then subsequently deny the just and legal consequences of his intentional acts." MC, Inc. v. Cascade City-Cty. Bd. of Health , 2015 MT 52, ¶ 31, 378 Mont. 267, 343 P.3d 1208 (internal citation omitted). A party must demonstrate the following six elements through clear and convincing evidence to establish equitable estoppel:
(1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of a material fact; (2) the facts must be known to the party to be estopped at the time of that party's conduct, or at least the circumstances must be such that knowledge of facts is necessarily imputed to that party; (3) the truth must be unknown to the other party at the time the representation was acted upon; (4) the representation must be made with the intent or expectation that it will be acted on by the other party; (5) the representation must be relied upon by the other party, leading that party to act upon it; and (6) the other party must in fact rely on the representation so as to change its position for the worse.
MC, Inc. , ¶ 32.
¶34 RJC contends that Kapor's execution of the Release was a representation that equitably estops her from pursuing her lawsuit. RJC argues that by removing her name from the Contract, Kapor represented that she was waiving all of her rights, including non-waivable rights under the U.C.C. RJC claims that it changed its position for the worse because when it sold the mobile home to a third party, it bore the risk that the mobile home may not sell for the outstanding amount.
¶35 As explained above, Kapor's right to a repayment of the surplus could not be waived, and the Release she signed did not transfer risk of deficiency to RJC. What's more, Kapor signed a document prepared by RJC stating that she was removing her name from the Contract and that she would have no rights to the home, or to a refund from ***328 payments made on the home or her down payment. The District Court noted that the facts known to Kapor at the time of signing the document were the facts stated in the plain language of the Release. There was no other admissible evidence to suggest what Kapor knew at the time she executed the Release. Kapor expressly knew that she would not be entitled to possess the home or to a refund of any payments she had made. There was no language in the document to suggest that Kapor knew of her rights under the U.C.C. or knew that the Release was an attempt to waive all of her rights under the U.C.C.
¶36 There also is no evidence that RJC changed its position for the worse. After default a secured party has the right to take possession of and sell the collateral. Sections 30-9A-609 and -610, MCA. There is no evidence to suggest that RJC would not have exercised its right to repossess and sell the mobile home, just as it did after the Release was executed. RJC therefore has not proven that any representation Kapor made led it to sell the mobile home to a third party or that it changed its position for the worse based on the Release.
¶37 Because all six elements of equitable estoppel cannot be satisfied, the District Court erred in granting RJC summary judgment based on its determination that Kapor was equitably estopped from pursuing her claims.
CONCLUSION
¶38 We reverse and vacate the order of summary judgment. Because a factual record *880 was not developed regarding the surplus to which Kapor claims she is entitled, the case is remanded for further proceedings consistent with this Opinion.
We concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

The original Installment Contract and Security Agreement was entered into by "Deneige Phillips." The Full Release of Contract was drafted with the name "Deneige Phillips," but it was signed by "Deneige Kapor."

U.C.C. Article 9 is codified in Title 30, chapter 9A, MCA.

The quoted Comment also refers to the general rules in § 30-1-102(3), MCA, which was repealed in 2005. See 2005 Mont. Laws, ch. 575, § 2. The repealed subsection, however, has no bearing on the protections provided in §§ 30-9A-608(1)(d) and -615(4)(a), MCA.

RJC did not make this argument in its motion or opening brief for summary judgment.

Kapor disputes other prerequisites for strict foreclosure, but we find this issue dispositive.

The District Court likened the Release to an accord and satisfaction, consistent with general principles of contract law. Those principles, too, require clear expression "that the performance is offered as full satisfaction of the original claim and not otherwise." 13 Sarah Howard Jenkins, Corbin on Contracts § 70.2 (Joseph M. Perillo ed., rev. ed. 2003). Unless there is an offer either by the debtor to give or by the creditor to receive a substituted performance in full settlement and an acceptance by the other party of the offer, neither an executory nor executed accord results from the conduct of the parties. Corbin on Contracts , § 70.2(3). The burden to establish proof of accord and satisfaction is on the person alleging it. Corbin on Contracts , § 70.15.

RJC contends on appeal that raising strict foreclosure first in its reply brief was appropriate because Kapor's response to its motion for summary judgment argued for the first time that "once the U.C.C. applies, the rights and obligations thereunder can never be discharged." RJC further argues that Kapor had an opportunity to address the issue during the summary judgment hearing. Kapor's summary judgment argument, however, did not raise a new issue; the basis of her complaint was that RJC failed to comply with the governing U.C.C. provisions, and she made the argument that the U.C.C. obligations could not be discharged in response to RJC's claim that the Release terminated the U.C.C.'s application. This Court has not been provided the transcript from the summary judgment hearing.